Druck, Appellant, *v.* Druck.

Argued March 14, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

2

*Harvey A. Gross,* for appellant.

*Charles A. May,* for appellee.

OPINION BY RHODES, J., April 22, 1935:

This is an action in divorce a. v. m. by the husband, Lance J. Druck, against his wife, Hazel J. Druck, on the ground of wilful and malicious desertion. The libel was filed and subpoena was served upon the respondent on October 9, 1933. The parties were married on January 1, 1931, after which they lived with the parents of the respondents at Shenk's Ferry, York County. They never went to housekeeping. A child was born in May, 1931. The date of the desertion alleged in the libel was October 19, 1931. Respondent filed an answer denying the allegations in the libel and averred that libellant from the 19th of October, 1931, separated himself from the respondent and their child, and since that date contributed nothing to their support. The answer further averred that the libellant from the 19th of October, 1931, refused to live with the respondent.

The case was referred to a master who filed his report in which he found the testimony established the fact that the respondent wilfully and maliciously and without any just or reasonable cause deserted the libellant, and recommended that the prayer of the libel be

granted. Exceptions to the Master's Report were filed and sustained by the court which overruled the report of the master and dismissed the libel at the cost of the libellant. From this decree the libellant appealed.

Following the marriage, and until July, 1931, libellant was employed as a laborer at 35 cents per hour at the Safe Harbor Dam on the Susquehanna River. During this time they lived with her parents. Upon leaving this position he went to work for his father, operating a thrashing rig. His parents lived some ten miles distant, and during this latter employment he returned to his wife and her parents only over week-ends. This continued until Sunday, September 20, 1931, when libellant said that he left the respondent because she was not treating him right, and because she did not on a certain occasion occupy his room. The respondent did not occupy his room on the night of August 29, 1931, because of the condition of their child, but did on the following night. On September 20th he returned to the home of his parents without giving any reason or notice to the respondent, and from that time on contributed nothing to the support of the respondent and their child. On September 23rd he returned to the respondent's home, and, as he testified, asked her if she wanted to go to housekeeping, or what she wanted to do, or whether she wanted separation papers. Respondent testified that on this occasion libellant asked her if she would sign separation papers, but denies the other part of his testimony. He did not again communicate with the respondent until October 16th, on which day he rented a house at Red Lion for $35 per month, although at the time he had only a prospective position with his uncle. There is no evidence to show what wages he would receive. After making a verbal lease for the apartment on October 16th, on that evening he called upon the respondent, and, as he testified, tried to get

4

her to go to this apartment. That this request was made by the libellant the respondent denied. The next meeting was on October 19th. On this occasion respondent testified that the libellant asked her to assist him in getting a divorce. This statement the libellant denied. After the meeting on October 19th, the parties were to meet again, but no such meeting ever took place.

Certain facts are not disputed. The libellant left the home of the respondent's parents where they had been living on September 20, 1931, and never again lived with the respondent; nor did he thereafter contribute to the support of his wife and child. The libellant on October 16, 1931, rented a house for $35 per month, although he had no position at that time, but a prospective one with his uncle at wages not disclosed. He paid no rent, and never lived in the house or apartment which he rented, but cancelled the lease on October 19, 1931. The respondent suffered from ill health after the birth of her child for a considerable period of time, which necessitated living at the home of her parents.

Respondent testified that she sent two letters to the libellant after the 19th of October, 1931, asking him to come back and live with her. Libellant admitted receiving at least one communication, but testified that there was no name signed to it, and that he was not always able to tell his wife's handwriting. His testimony is not definite as to the request by respondent that he return. A witness for the respondent testified that at one time after the alleged desertion the libellant said he could not be bothered with his wife and child, as he did not have time. The libellant admitted making a statement on October 19, 1931, to the effect that he did not see how he could pay $5 a week for support of his wife and child as he was not making any wages. The same statement in substance was made

relative to a payment of $3 per week, and also to a payment of $1.50 per week. Nevertheless, three days prior, on October 16th, he had rented a furnished apartment for $35 per month to which he says he requested his wife to move, and that she refused. A witness for the respondent in this connection testified that he heard the libellant say he could rent a house, but he could not keep up the payments as the payments were too high. The respondent also testified that the libellant stated to her on October 19, 1931, that he could get a house in Red Lion, but he did not know how long he could pay the rent; it might be one week, or it might be two. The respondent testified that she never refused to go to Red Lion, and that she would have gone if he had made an offer to her to go. A witness for the libellant testified that the respondent admitted the libellant had requested her to go to housekeeping in the furnished apartment at Red Lion.

The libellant's contention is that the respondent wilfully and maliciously deserted him when she refused to occupy the apartment in Red Lion which he had rented for $35 per month. Respondent not only denies the offer was made, and contends that she did not desert the libellant and would have lived with him if he had offered to take her there, but further alleges the libellant left her on September 20, 1931, without cause, and has never thereafter contributed or offered to contribute to the support of herself or their child.

The testimony of the libellant and his witnesses is contradicted in its important phases by the respondent and her witnesses. In such a case there must be convincing circumstances which warrant a disregard of the contradictory evidence in order to make out a case for the libellant: Wagner v. Wagner, 112 Pa. Superior Ct. 485, 171 A. 419. We find from the evidence no such convincing circumstances. On the contrary the evi-

dence discloses that the libellant left his wife and child on September 20, 1931, without notice and without giving any reason, and thereafter never contributed to their support. It is also apparent his offer to provide a home at Red Lion, if made at all, was not made in good faith, as he disclosed no financial ability to support his family and pay $35 a month rental.

We have carefully read and considered the testimony. The rule of law which is to be applied in this case is well settled. The libellant must establish his case by clear and satisfactory evidence: Lomax v. Lomax, 87 Pa. Superior Ct. 543; Twaddell v. Twaddell, 95 Pa. Superior Ct. 429; Hess v. Hess, 105 Pa. Superior Ct. 596, 161 A. 743.

The libellant must also be free and clear of the charge by the respondent that he, the libellant, deserted her and their child and returned to the home of his parents. Any offer to provide a home must have been made by the libellant in good faith: Loughney v. Loughney, 111 Pa. Superior Ct. 214, 169 A. 460.

We are convinced that the libellant has not made out such a clear case of wilful and malicious desertion upon the part of the respondent as is required by the law of Pennsylvania and the decisions of our appellate courts. Our judgment of the matter agrees with the court below rather than with the master.

Decree of the lower court is affirmed at the cost of the appellant.