## Werling, Appellant, *v.* Werling

Argued May 4, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*John J. McGrath,* for appellant.

*Max U. Appelbaum,* for appellee.

OPINION BY JAMES, J., September 29, 1937:

On May 28, 1935 libellant filed his libel in divorce alleging that from November, 1930, his wife had wilfully and maliciously deserted him. A master was appointed, who, after full hearing, filed his report recommending that the libel be dismissed. In an opinion by GARDNER, J., exceptions to the report of the master were dismissed by the court en banc, MUS-MANNO, J. dissenting. Libellant appeals.

Libellant, then aged twenty, and respondent, nineteen, were married July 10, 1925 and lived happily together in Allegheny County until November, 1930. According to libellant's testimony he obtained employment in Canton, Ohio, and requested his wife to go with him, but she refused stating, "If you want to go,

go ahead. I am getting disgusted with married life anyhow." About a week after he went to Canton, he wrote his wife a letter, and wrote regularly thereafter but received no reply. He returned to Pittsburgh in May, 1931 and found his home empty and his wife living with her parents. He attempted to persuade her to return, but she again refused stating she was through with married life. He then moved in with his brother where he lived until the latter part of 1932, after which he resided with Ray Allen until September, 1935. After his return from Canton, he called respondent twice on the telephone and later, in company with his brother, while on the street, tried to persuade her to return, but she again refused. From the time he left for Canton in November, 1930, he had not cohabited with his wife. John J. Werling, a brother of libellant, testified he was present when libellant requested respondent to come back and make a home at the witness's house, but she refused. The testimony of Ray Allen and Charles E. Werling, another brother of libellant, with whom respondent lived for ten months in 1934, related largely to the facts of the separation. Richard Williams and Frank Munroe testified that in the spring of 1934, while moving the household effects of Charles Werling, respondent told them her husband went away to work and she didn't care to go with him, and that she was sort of tired of married life.

Mary J. Werling testified that when libellant got the job in March at Canton, she wanted to go with him, but he refused stating that as soon as he made enough money he would send for her. While libellant was at Canton, he wrote his wife three letters, in one of which he directed her to move her furniture over to her parents' home, which she did during the month of May, 1931. When her husband returned from Canton in August, he lived with his sister at Crafton. He frequently came to her home, took her for rides, went to

shows and on occasions both of them would stay over night at his sister's house. At the time of the death of her mother in May, 1932, libellant remained at the home for two weeks, occupying the same bedroom with his wife. Her family moved to Fairview Street, where her husband continued to see her and later the family moved to Furley Street where he visited every weekend, Saturday night, Sunday and Sunday night; they then moved to Violet Way in May, 1933 and he continued to visit her until 1934. During this period she frequently requested her husband to make her a home, but he refused stating he did not want to be married anymore and was now "footloose and fancy free."

In corroboration, respondent called Stella Nawrocki, a grocer, from whose place of business the wife frequently telephoned her husband. On one occasion she heard the wife ask the husband to make a home for her. This witness offered to help libellant furnish a home, but he refused stating, "he don't intend to be married." Catherine Sullivan, respondent's sister, Violet Sullivan, a sister-in-law and Anna Mae Carrick, a life-long friend, corroborated respondent as to the relations between libellant and respondent at the family home. Hannah Dorman was present in 1934 when respondent asked libellant to get a couple of rooms, which he refused because he was having too good a time.

In determining this appeal, it is our duty to examine the testimony and make our independent findings. We are in no sense bound by the findings of the master, but, in view of the fact that he had the advantage of seeing and hearing the parties and their witnesses, his findings should be given the fullest consideration; and when considered in the light of the irreconcilable conflict of libellant's and respondent's testimony, we are persuaded the libel was properly dismissed. If libellant's testimony is to be believed, it presents a picture of a happily married life terminated because his wife

refused to follow him to his new employment. From 1925 to 1930 he does not mention a single incident of unhappiness or a failure on the part of the wife to perform her duties, and solely because she was tired of her bonds, refused to follow him. His testimony was corroborated by his brother, John, and two other witnesses who were engaged in the same work as he; as to the latter two witnesses, the corroboration consisted of loose statements made by respondent as to her being tired of married life. His brother, Charles, never heard the wife say anything concerning their separation. Opposed to the testimony of libellant and his witnesses, we have the testimony of respondent and her five witnesses, who definitely contradict libellant on vital portions of his testimony. Mrs. Nawrocki frequently heard respondent call her husband by telephone which often ended with the wife crying; she offered libellant money with which to furnish a home for his wife, but this he refused. In respect to the relations which existed between libellant and respondent after the death of her mother at the various places where her family resided, the testimony of the three witnesses is, to our minds, most convincing. Concerning this testimony, the master said: "It is true these girls were her friends, but their testimony had the ring of truth, and they were not shaken by the cross-examination."

In an action for divorce, it is incumbent on the libellant to establish his case by clear and satisfactory evidence and unless there is this preponderance in his favor, the bill will be dismissed: *Wagner v. Wagner*, 112 Pa. Superior Ct. 485, 171 A. 419. Viewed in the light of the positive contradiction by the wife of the circumstances under which libellant left his home to go to Canton, and the most convincing testimony of respondent's witnesses as to the relations which existed between libellant and respondent upon his return to Pittsburgh, we are convinced that his testimony was

not such clear and satisfactory proof as would justify the granting of the divorce.

Emphasis was laid in the opinion of the dissenting judge that no disinterested person was called to support the respondent's testimony as to the relations which existed between the husband and wife. The wife did call members of her household and those who visited at their home. It is quite improbable that any other witnesses would be in a position to learn of the intimate relations which existed in the home. Nor are we impressed by respondent's failure to produce the bank book. She said she would have brought the bank book if she could have got it out of the bank. These records were available to libellant if he regarded them as material. Nor do we see any reason to doubt the truthfulness of respondent's testimony because she laughed at the contents of her husband's letters.

Decree affirmed.