## Murfit v. Murfit, Appellant.

Argued November 15, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and RHODES, JJ.

*Nochem S. Winnet,* with him *Albert W. Johnson, Jr.,* for appellant.

No appearance was made, nor brief filed for appellee.

OPINION BY STADTFELD, J., January 31, 1939:

This is an appeal by respondent from a decree in divorce on the ground of wilful and malicious desertion. Richard H. Murfit began divorce proceedings against his wife, Jean D. Murfit, on November 19, 1936. His libel in divorce alleged as grounds (1) cruel and barbarous treatment; (2) indignities to the person, and (3) desertion. The libel gave as the address of the libellant, 343 West Fourth Street, Williamsport, Pennsylvania, and the address of the respondent, Ambler, Pennsylvania, and the date of the alleged desertion as January 7, 1935.

The respondent filed an answer denying the alleged causes for divorce. The residence of both the libellant and respondent is stated to have been at all times, Ambler, Pennsylvania.

The hearings were held before a master appointed by the court. The testimony of the libellant proved a marriage with respondent on January 15, 1927. Immediately after their marriage, they lived at 920 Rosemary Avenue, Ambler, Pennsylvania, in a house owned

by the libellant, which was the libellant's home from a former marriage. In September, 1933, the libellant obtained employment in a C. C. C. camp at Waterville, Pennsylvania. He was moved, in December, 1933, to a camp in Trout Run, Pennsylvania. He lived at the camp and said that he established a home in Trout Run, which lasted until the latter part of August, 1934. At the time of the hearing, he gave as his residence, 343 West Fourth Street, Williamsport, Pennsylvania.

There is no evidence that a home was established for the respondent in either Waterville, Trout Run, or Williamsport. While libellant was at Trout Run, the respondent lived at the hotel for awhile, at a boarding house, and then shared a house with a Dr. Free and his wife. The libellant says that respondent thought Trout Run was a "dead place" and did not like to stay there. He and the respondent went back to their home in Ambler and fixed the place up. He had to return to camp and complains that he did not hear from her until Christmas when she wrote to him inquiring whether he was coming home for Christmas or New Year's day. He replied he could not get there.

The respondent came to camp on January 10. There is confusion as to the year. The libellant says they stayed together at a Trout Run Hotel for about a week, and then went to Williamsport for the day. Having business to attend to, he told the respondent he would meet her at the Lycoming Hotel. As he met her in the lobby, without any excuse whatsoever, according to the libellant, she struck him with a newspaper. Respondent offered the excuse that she had been grossly insulted. They went back to Trout Run, and the next day, the respondent left for Ambler. That was the last time they lived together, and the libellant fixes it as the time of the desertion. Besides confusion as to the date, there is confusion just where they lived together the last time. He testified that it was at the Trout Run Hotel, and subsequently that it was at a home.

The cross-examination of the libellant developed that the home in Trout Run was first a room at a Mrs. Lauer's which they occupied for four or five weeks, then a boarding house, and finally, a home with a Captain and Mrs. Free. The respondent objected to being compelled to live in the same house with Mrs. Free because she was sickly. Libellant's alleged residence in Williamsport was the Y. M. C. A. The cross-examination developed further that the libellant's interest in one Mildred Hunter began in January 1935, the date of the alleged desertion.

The date of the alleged desertion in the libel is January 7, 1935. On direct examination, he testified that the respondent came to camp on January 10, and they stayed together about a week. This was just before the quarrel at the Lycoming Hotel. In answer to the master's question, he testified that the Lycoming Hotel incident was around January 22d or 23d.

At the conclusion of the libellant's testimony, the master stated of record that the evidence as to desertion was not satisfactory. The only evidence as to desertion offered after this statement of the master, was a receipt for tax payments in 1936 by the libellant at Williamsport.

The libellant called ten witnesses, none of whom testified as to any fact bearing on the issue of desertion. Capt. Corbett, the Chaplain, testified that libellant was required to be at the camp twenty-four hours a day, and it was against the regulations for wives to live at the camp.

The respondent denied the charge of cruelty, indignities and desertion. Their home, she testified, was always at Ambler, Pennsylvania, on which there was a mortgage which was paid off by both during their marriage. She first visited the libellant when he took the assignment at Waterville. She went back to Ambler because it was their home. There never was any question of remaining at Waterville. In January 1934 she wrote

to the libellant that she was lonely in Ambler and he asked her to come to Trout Run. She remained at the hotel (Mrs. Lauer's) about five months. She then moved to a boarding house to save money, and remained there a few months. They then took a house jointly with the Frees. The libellant could visit respondent only a few nights a week.

In September 1934 they both left Trout Run for a vacation intending to go to Canada. They went back to the Ambler home, but instead of taking a vacation spent the time in fixing up the house. When the libellant left Ambler, repairs were still going on and the parties were on good terms.

After libellant went to camp, respondent did not see him until January 1935, when the quarrel at the hotel occurred. Following this incident, he took her back to the hotel at Trout Run, and the next day she went back to Ambler. Thereafter, she wrote letters to him, but received no reply. She was compelled to go into Montgomery County Court for a support order and she didn't see him again until May 1936, when the hearing took place. The court ordered that she was to have the house to live in and $10 per week. She testified that she had given the libellant no cause for complaint and the only reason she could assign for his change of feeling was his acquaintance with a Mrs. Hunter.

The respondent produced eight witnesses. All of them paid tribute to the respondent's manner, standing in the community and ability as a housekeeper. Col. Clarence Day, the Commandant of the camp, denied that the marital difficulties of the libellant had anything to do with his being dropped. The Chaplain of the camp, a Capt. Brundick, said he visited the Murfits at their Trout Run home and it was not the kind of home that he would care to reside at all year round. He stated that the respondent gave him the impression that she did not want to be separated from the libellant.

The master filed his report on July 9, 1937. He

stated there was no evidence of cruel and barbarous treatment, and not sufficient evidence of indignities, and recommended a divorce on grounds of desertion. Exceptions were duly filed by the respondent to the findings and conclusions relating to desertion.

The learned court below (RHONE, J., and LARRABEE, P. J.) dismissed the exceptions. A final decree was entered and thereafter this appeal was filed.

Where an action is heard before a master, we are required to consider the evidence de novo, pass upon its weight and upon the credibility of witnesses, and reach an independent conclusion upon the merits as to whether a legal cause for divorce has been well established: *Huston v. Huston,* 130 Pa. Superior Ct. 501, 197 A. 774.

The burden is upon the libellant to prove his case by clear and satisfactory evidence, and there must be a preponderance of the evidence in his favor: *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 181 A. 69; *Rinoldo v. Rinoldo,* 125 Pa. Superior Ct. 323, 189 A. 566.

After a careful examination and consideration of the entire record, we are of the opinion that the libellant has not sustained the burden which the law casts upon him to entitle him to a decree. That this also was the opinion of the master is shown by his statement on the record, "There is a desertion charged here from January 7, 1935, on. Now the evidence is not satisfactory one way or the other on that question." Except for the tax receipts offered in evidence showing the payment of a city tax and county personal taxes for 1937, assessed in the City of Williamsport, no further evidence was offered by libellant on the charge of desertion. The court below does not discuss this charge. A singular circumstance appears in that while the libel asserts a desertion on January 7, 1935, the evidence discloses, according to the opinion of the court below, that the parties resided together at the Trout Run Hotel for a period of about a week or ten days after January 7, 1935.

The attitude of libellant towards respondent is manifest from his letter to respondent dated December 11, 1934, respondent's exhibit No. 1, wherein he addresses her simply as "Jean" and signs it as "Dick." Likewise, his letter of February 20, 1936, wherein he addresses her as "Jean Murfit" and signs himself as "Very truly yours, Richard H. Murfit."

At the time respondent went back to Ambler, Pennsylvania, the testimony shows that the libellant had no home for the respondent to live in at Trout Run; they were staying temporarily at the hotel. Their home was in Ambler, Pennsylvania, the home that he himself, had painted and papered just a few months before. It was this home which the court in Montgomery County provided should be her home when they imposed upon the libellant, a $10 a week support order.

"Whether the marital contract shall be severed is the gravest of questions, not alone to the parties, but to the state, for the social structure rests upon it": *Middleton v. Middleton,* 187 Pa. 612, 615, 41 A. 291. Marriage is an institution in the preservation of which the commonwealth, itself, has such a vital interest that it is always the unnamed third party in every divorce proceeding: *Huston v. Huston,* supra.

In a proceeding dissolving a marriage contract, the case is not to be disposed of on a doubtful balance of the evidence nor upon unsubstantial inferences. There must be a presentation of a clear and satisfactory case on which the determination of the court may be confidently rested, and one who would win a case of this character must be clear of everything which is charged as a cause of separation against the opposite party: *Wagner v. Wagner,* 112 Pa. Superior Ct. 485, 499, 171 A. 419. A decree may be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out: *Kurtz*

*v. Kurtz,* 124 Pa. Superior Ct. 588, 596, 189 A. 569. It is incumbent on the libellant to establish his case by clear and satisfactory evidence, and unless there is this preponderance in his favor, the bill will be dismissed: *Werling v. Werling,* 128 Pa. Superior Ct. 380, 194 A. 336.

In *Walsh v. Walsh,* 117 Pa. Superior Ct. 579, 178 A. 399, it was held that before the wife's separation can be deemed a wilful and malicious desertion, the libellant must show that he has offered a suitable home, suitable with regard to his circumstances. It is clear from the testimony in the instant case, that the libellant was not anxious for a resumption of the marital relations.

In *Mertz v. Mertz,* 119 Pa. Superior Ct. 538, 180 A. 708, this court said, at p. 540: "An apparently wilful and malicious intent to desert may be rebutted by evidence that the separation was encouraged by the other party or was by mutual consent." Then, in discussing the effect of a support order, said, at p. 542: "Such an order, while not conclusive, is, of course, some evidence of a prior desertion by the libellant, to overcome which countervailing proof is necessary." See, also, *Loughney v. Loughney,* 111 Pa. Superior Ct. 214, 169 A. 460.

All the facts and circumstances negative a finding of desertion on the part of the respondent. We believe the exceptions to the master's report should have been sustained.

The decree is reversed and the libel is dismissed at the cost of libellant.