Garbett, Appellant, *v.* Garbett.

Argued April 26, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Robert M. Ingram,* with him *W. Davis Graham,* for appellant.

*George W. West,* for appellee.

334

OPINION BY BALDRIGE, J., July 1, 1939:

The appellant filed his libel in divorce, alleging desertion and indignities to the person. The case was not referred to a master nor was a request made for a jury trial. The learned court before whom the case was heard concluded that neither charge was proven, and refused the divorce.

It is incumbent upon a libellant to establish his case by clear and satisfactory evidence. Unless there is this preponderance in his favor, it will be dismissed: *Waggner v. Waggner,* 112 Pa. Superior Ct. 382, 171 A. 102. A decree may be granted on the unsupported testimony of the complainant, but if the testimony is contradicted and shaken by the respondent and there is no convincing circumstance warranting a disregard of the respondent's evidence, a divorce will not be granted: *Romano v. Romano,* 128 Pa. Superior Ct. 409, 194 A. 328. The opinion of the court below, who had the advantage of seeing and hearing the witnesses, is entitled to due consideration, but the full duty is imposed upon us to examine carefully the evidence and reach an independent judgment whether the libellant is entitled to a divorce. This we have done and have concluded that, in the light of the above principles, the proof in this case does not measure up to the legal requirements.

The husband, 41, and the wife, 36, were married December 16, 1919. One child, a boy, was born to this union on September 12, 1921.

But little comment is necessary respecting the charge of desertion. The appellant, in his brief, confines his argument to the charge of indignities to the person. The respondent testified that on Sunday, November 10, 1934, she and her husband had a quarrel, during which he struck her a violent blow, and the next day she left their common abode. There was no dispute that the libellant had asked her to return but the evidence indicates that the request was not made in sincerity and good faith. The wife, accompanied by her mother, met

the libellant, by arrangement, and he said he would take her back, provided she confessed that she had been indiscreet with other men. This she refused to do. Not long afterwards, she went to libellant's home, with her clothes, and offered to return, but he said he did not want her any more and that if she persisted in staying, "you will get the same thing you got Sunday."

Even if we assume the wife left her husband against his wishes and without justification, the evidence shows that she returned shortly thereafter and, in good faith, expressed her willingness to live with him. Her action in leaving the home was not a desertion, persisted in, as entitles the husband to a divorce: *Noden v. Noden,* 111 Pa. Superior Ct. 513, 170 A. 465.

We think nothing is to be gained by entering into a detailed discussion of all the testimony in this unfortunate case relating to the charge of indignities. While our reference to the evidence will be somewhat brief, it cannot be accurately assumed that all of it has not been examined and weighed.

The respondent was an expert bowler and was employed during the bowling seasons of 1929, 1930, and 1931 by an operator of a bowling alley. She devoted at least part of her income to defraying the expenses of the home and in helping her husband pay debts he had incurred. The libellant did not object to his wife's earning wages, but he complained of her returning home at a later hour than her work required, and accused her of indiscretions with other men. When he remonstrated with her about keeping late hours she would lose control of her temper and, as he stated, "pick up anything or throw anything or strike me with the first thing, even with her fist." But there was no evidence that he sustained any physical injury or that her conduct undermined his health or interfered with his work. On one occasion she was accosted on the street by a woman who charged her with being friendly with her husband, who visited the bowling alleys where the respondent

336

was either employed or frequented, and as a result both women were arrested. The husband told of an incident in September, 1935, when they both attended a picnic held by the Elks' lodge. He, as a committeeman, was serving drinks where a dance was being held and he observed his wife being embraced by one of the musicians. Admittedly, she frequently went to McKeesport to visit her mother who was ill. When she was on one of these visits, the husband, in company with a friend named Wachter, drove to McKeesport and saw his wife in the evening come out of a "beer joint." Walking toward her mother's home, she was joined by a man. The husband and Wachter followed and, learning that she had not gone into the house, they went to the rear where a pair of steps leads from the first to the second floor, and found the wife and her companion under the steps. The libellant said he struck at the man, who got away by running through the yard into the street. Wachter testified that when they saw the couple go to the rear of the house, the libellant drove his car on the driveway or alleyway so that his lights flashed right on the porch; that after the husband got out of the car he and his wife started to fight and Wachter and the other man left while they were arguing and swearing. Wachter's testimony confined to the McKeesport trip was the only corroboration of libellant's charges. The son was called by libellant but he said he did not care to testify for or against either of the parties as he lived with his father and went to see his mother every week-end.

The wife did not specifically deny all the charges of threats and fights. She testified that their troubles started practically from the time of their marriage. Her explanation of the alleged episode with a woman in December, 1932, was that she was attacked without justification, that she was in no physical condition to engage in a fight as she had but recently come from the hospital where she had undergone an operation, and

that she sought the protection of a police officer nearby and requested him to arrest the woman. She testified further that her husband, employed as a policeman by the Pittsburgh & Lake Erie Railroad, frequently worked at night and on occasions when she arrived home, tired from her work, he would violently attack her and interfere with her rest and sleep. She denied the accusation of indiscretions with other men, and, concerning the picnic affair, she stated that she was approached by a musician who was intoxicated and that she was very much embarrassed by his unwarranted action, which occurred in the presence of a number of people. She said both she and her husband drank beer at times and when she was in McKeesport visiting her mother she went across the street to get a glass of beer and on her way home she was joined by a "kid," not more than 19 or 20 years of age, who was going with a girl who had "run out on him," and as he could not find her he made inquiry if she knew of the girl's whereabouts. She suggested, in the course of their conversation, that they step to the side of the house as she and her husband had been having arguments and she did not care to be seen with a young man. About that time, to avoid a flare of lights, evidently turned on them as explained by Wachter, they stepped under a stairway, where they were talking when the husband got out of the car. She said the young man did not run away, but stayed and tried to explain to her husband why he was in her company.

Violent quarrels between this husband and wife were no doubt occasioned by the accusations and actions of both parties. The libellant is not in a position to complain if he, by unwarranted charges, provoked his wife's conduct, unless her retaliation was excessive, which we do not find in this record. There seems to have been an absence of mutual forbearance, affection, and a want of compatibility of temper, which are essential to a happy, harmonious marriage. If, as alleged, the wife failed to discharge her full duties toward her husband,

the evidence does not establish that her continuous conduct and treatment, not caused by him, was of such a serious character as to render his condition intolerable or his life burdensome.

Our study of this record convinces us that the difficulties of this unfortunate marriage are due, to a large extent, to the conduct of both the husband and the wife, and that the evidence is not sufficiently clear and satisfactory to support a decree severing the marriage relation.

Order of the court below refusing a divorce and dismissing the libel is affirmed, at the cost of the appellant.