## Miller *v.* Miller, Appellant.

Argued December 11, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, RHODES and HIRT, JJ.

*Israel Krohn,* with him *Herman B. Shepard,* for appellant.

*John Field Oldt,* for appellee.

OPINION BY BALDRIGE, J., January 30, 1941:
A husband filed his libel charging his wife with cruel and barbarous treatment, indignities to the person, and

adultery. The case was referred to David B. Skillman, Esq., as master, who, after numerous hearings, filed a report, which, although not controlling on the court below or this court, is entitled to great consideration: *Golden v. Golden*, 134 Pa. Superior Ct. 211, 216, 3 A. 2d 941. The master capably and carefully analyzed the testimony, and in his commendable report recommended a divorce be granted on the grounds of indignities to the person and adultery. Exceptions thereto were overruled by the learned judge below who, in his opinion, adopted the findings and approved the recommendations of the master and accordingly granted a divorce.

We have discharged the duty that rests upon us of examining the testimony offered by both the parties and have come to the independent conclusion that the libellant has established his right to a divorce by clear and convincing evidence: *Druck v. Druck,* 118 Pa. Superior Ct. 1, 178 A. 523; *Starr v. Starr,* 134 Pa. Superior Ct. 497, 3 A. 2d 939.

There is no new legal question involved in this appeal that requires consideration. This case, as all other divorce cases, must necessarily depend upon its own facts. No special advantage is to be gained by detailing a large amount of testimony involving obscene actions and indecent language that does not reflect credit on this appellant. Reference to the large amount of testimony will be relatively brief.

The parties were married October 4, 1923, and thereafter lived at Wilkes-Barre and Easton. One child was born to the marriage. The libellant is employed as a decorator in a department store and the respondent is a part time clerk. The marital difficulties started in 1930 and the separation occurred in March 1933.

In support of the charge of indignities the libellant showed, inter alia, that the respondent used profane and abusive language; accused him and told others that he had a venereal disease, which was not proven to be

the case; and that he was impotent. She accused her husband continually of running around 'with other women; charged him with being "dirty"; compared him unfavorably with other men; expressed the hope that he would be killed; threatened to poison him repeatedly; conducted herself in her home and in public places in a lewd and indecent manner; inflicted physical violence on a number of occasions; tore his clothes; threw numerous articles at him; and came home in the early hours of the morning intoxicated. The wife's continuous course of malicious mistreatment grew more vehement and bitter as time went on. The important features of the libellant's testimony were corroborated by other witnesses.

Some of this evidence tending to support the charge of cruel and barbarous treatment is entitled to consideration in connection with the charge of indignities to the person: *Sarbiewski v. Sarbiewski,* 127 Pa. Superior Ct. 463, 193 A. 91; *Huston v. Huston,* 130 Pa. Superior Ct. 501, 197 A. 774. The libellant proved that the effect of her unwarranted and offensive conduct made him nervous, fearful that he would lose his job, humiliated him before his friends, and interfered with his sleep, making his condition generally intolerable and life burdensome. The evidence indicated that the libellant was a hard-working man of good habits and of a gentle manner, and that his conduct did not provoke his wife's unfounded charges. We have no trouble in reaching the conclusion that the charge of indignities has been sustained.

The evidence in support of the charge of adultery was likewise convincing. It shows that the respondent was adulterously inclined. She made statements to the libellant that she would like to have another husband, and told a neighbor of her intention to "run around" with other men. Another woman acquaintance told of her obvious susceptibility to the attentions of

men, and that she compared unfavorably her husband to other men who met her approval.

Harry Ralph frequently in the afternoon and evenings took her for automobile rides, and she received attention from him over the objection of her husband, of a very suspicious character. The master correctly concluded that there was not sufficient proof of actual adultery with that individual, although her relations with him throw considerable light upon her general conduct.

There was evidence produced by the libellant, however, that she did commit adultery with James Greene, for whom she had expressed a fondness. She took an automobile ride, by a previous arrangement, with him on the evening of February 3, 1933, at about nine o'clock to Bushkill Park instead of going to a beer party to which she had been invited. When she returned home her breath smelled of alcohol, and when questioned by her husband she stated loud enough so that Mrs. Fletcher and Richard Miller, brother of libellant, roomers in the house, heard her: "Yes, Jim Greene laid me, and what the hell of it?" She told Mrs. Fletcher the following day and different times thereafter of the illicit relation she had with Greene. Greene, on February 4 at the request of the husband, appeared at the house and in the presence of the husband and wife, Mrs. Fletcher, and Richard Miller, acknowledged his sexual relation with the respondent the night before. He said that they were both drinking and expressed his regret and hoped that the husband would forgive his wife.

There was offered in evidence a signed confession written by the respondent. She stated therein that Greene had driven her to Bushkill Park, that they had been drinking applejack, and had intercourse. Richard Miller testified that he was present when the confession was written, and that it was handed to him and he

read it. Mrs. Fletcher said she came in at the time the respondent was executing the paper, but that she did not read the contents thereof. The libellant and his witnesses testified that the paper was signed willingly without any influence being exerted by anyone.

The respondent denies the alleged wrongdoing with Greene, but acknowledged that she had been on an automobile ride with him, and had taken a taste of liquor. She contended that the paper was signed the early morning of February 4, under threats by her husband that he would do her serious bodily harm if she did not execute this paper, and that the contents set forth therein are not true. Her testimony was contradictory as to the time and circumstances she affixed her name thereto. She gave several dates when it was executed. The paper itself bears the date of February 7.

Greene denied that he made any acknowledgment of his illegal conduct, but that he was simply expressing a regret for taking the respondent out for a ride. The respondent contends the evidence was not sufficient to support the charge of adultery, relying on *Matchin v. Matchin*, 6 Pa. 332, which held that a wife's confession of adultery is only competent evidence if it is supported by substantial circumstances and free of collusion, and that the confession of her paramour was only properly admitted in evidence, when it was communicated to, and confirmed by, her. See, also, *Morse v. Morse*, 81 Pa. Superior Ct. 602.

The evidence in this case, as above stated, shows the presence of the wife and others when Greene made his admissions, and there were other corroborating circumstances that made it admissible and give it weight.

The respondent offered in evidence certain letters written by libellant after the Greene episode, which she contends show a forgiveness and condonation, but we think these letters, which made no reference to her adultery, did not amount to a forgiveness or condona-

tion of her conduct. We are not favorably impressed by the testimony of the respondent. Her denials of her husband's charges were vague and indefinite, and some were not specifically contradicted.

A careful review of all the testimony convinces us that the libellant clearly established that he is an innocent and injured husband and is entitled to a divorce.

The decree of the court below is affirmed.