Opinion by
 

 Baldrige, J.,
 

 The libellant brought this action in divorce against his wife on the ground of desertion. The master reeom
 
 *522
 
 mended the divorce. Exceptions filed thereto were overruled by the court below. This appeal followed.
 

 It is incumbent upon a libellant to establish his case by clear and convincing evidence, and it is the duty of the court to consider with care whether he has successfully met that burden:
 
 Esenwein v. Esenwein,
 
 312 Pa. 77, 167 A. 350;
 
 Rinoldo v. Rinoldo,
 
 125 Pa. Superior Ct. 323, 189 A. 566;
 
 Hess v. Hess,
 
 105 Pa. Superior Ct. 596, 161 A. 743. If the testimony of the libellant is contradicted and shaken by the respondent there must be convincing circumstances which warrant a disregard of the respondent’s evidence:
 
 Murfit v. Murfit,
 
 134 Pa. Superior Ct. 327, 3 A. 2d 1020;
 
 Romano v. Romano,
 
 128 Pa. Superior Ct. 409, 194 A. 328;
 
 Druck v. Druck,
 
 118 Pa. Superior Ct. 1, 178 A. 523. It has been said frequently that divorces are not to be obtained readily without clear proof of imperious reasons.
 

 After a careful examination of the evidence in this case, in the light of the above principles, we all are of the opinion that the proof does not measure up to legal requirements.
 

 The evidence discloses that the parties were married March 22, 1912, and that they are the parents of a son now twenty-nine years of age. The libellant concedes that his wife was a good housekeeper and properly cared for their child during his infancy. He contends, however, that she was arbitrary, complaining, dictatorial, domineering, and generally disagreeable, and that she wilfully and maliciously deserted him on June 26, 1928.
 

 She, on the other hand, testified that he was irritable, nasty, mean, drank frequently to excess, came home late to his meals in a drunken condition, and that he failed at times to supply his family with food. The testimony clearly indicates, particularly within the last seven years, these parties had not lived harmoniously or happily together.
 

 On the evening of June 25, 1928, the libellant and a
 
 *523
 
 friend went to Lancaster, and according to libellant’s testimony he returned home about 11:30 that night, went upstairs prepared to retire when his wife jumped out of bed and with an oath inquired where he had been. She went downstairs taking the bedclothes along and remained there overnight. The next morning libellant found no signs of breakfast and when he made inquiry about getting something to eat she, with an oath, said that she was done getting anything for one who runs around half the night, and she then became boisterous. He put on his hat and coat and went out. In about two hours he returned, saw nothing of his wife and son, went upstairs and found that the bureau drawers were open and her clothes and personal effects were taken. He then went over to her aunt’s home where he thought she had gone, and had a talk with the aunt, who was not called as a witness. He shortly returned to the house in an automobile with a friend to get his belongings and wearing apparel and took them to his mother’s home. Then he went to see his attorney.
 

 The wife denied most of this testimony. She said her husband returned to his home the morning of June 26 at three o’clock intoxicated, and that he swore at her and when she asked him for market money he told her that she had received the last market money she was going to get. She then went to the bathroom and he followed, pushing her against the doorjamb slightly injuring her arm. Fearful that he was going to do her physical injury she took some bedclothes, Avent doAvnstairs and slept on the davenport. When the husband appeared the next morning she told him that there was oatmeal, but there was no milk in the house. Shortly afterward he went out the door, returned half an hour later and started to move his clothing. When she inquired whether that was his final decision he said: “Yes, we are not mated, Ave cannot get along together.” She reminded him that he had a wife and child. He then inquired how much money she wanted, to Avhich she
 
 *524
 
 replied $80. He said “You go to hell and get it,” and then left. He came back later and got more clothes and departed finally about three o’clock.
 

 That same afternoon she had him arrested for nonsupport and he has been continuing to pay her under an order made by the court. The husband conceded that his wife never said that she would not live with him, and that he has never spoken to, or attempted to communicate with, her since the day he left although he knew that she returned to the home that same day and remained there for a period of six weeks. She testified that he never made any effort toward a reconciliation.
 

 A careful consideration of the evidence convinces us, however, that the separation at its inception or thereafter did not amount to a wilful and malicious desertion on the part of the wife. The libellant’s conduct clearly indicates that he was perfectly willing to live separate and apart from his wife. He never requested her to remain in the home or apparently objected to her departure. His conduct after the disagreement that they had on the day of their final separation, while not tantamount to an express consent to their living separately was entirely consistent with the conclusion that it was not against his will:
 
 Pearce v. Pearce,
 
 53 Pa. Superior Ct. 129.
 

 The testimony in its entirety is sufficient to repel the inference that the wife wilfully and maliciously deserted the husband; and that her purpose was to abandon their marital cohabitation. We do not think her action in temporarily leaving the home, to which she shortly thereafter returned, indicated such an intention to desert, persisted in, as entitles the husband to a divorce:
 
 Noden v. Noden,
 
 111 Pa. Superior Ct. 513, 170 A. 465;
 
 Garbett v.
 
 Garbett, 136 Pa. Superior Ct. 333, 7 A. 2d 368.
 

 The decree is reversed and libel dismissed.