Landymore, Appellant, *v.* Landymore.

652

Argued April 19, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, ROSS and ARNOLD, JJ. (DITHRICH, J., absent.)

*Harry M. Jones,* for appellant.

*Karl D. Enzian,* with him *Rahauser, Van der Voort & Royston,* for appellee.

OPINION BY RENO, J., July 19, 1945:

Appellant charged in his libel that respondent deserted him in February, 1935, and persisted in the desertion until October 28, 1943, when this action in divorce was instituted. On a hearing before the trial judge, sitting without a jury, the libel was dismissed.

Our own independent examination of the record has failed to convince us that the court erred.

About many features of the case there is little dispute. The parties were married June 18, 1927, when each was sixteen years of age, and they went to the home of respondent's parents, where they lived for about a year before moving to various rented apartments. In October, 1929, respondent returned to her parents' home to give birth to her second child, following which the couple moved with their children to a farm near Herminie, Westmoreland County, owned by libellant's grandmother. About two years later libellant was sentenced to prison upon a conviction of robbery, and respondent lived with her parents again until libellant's release in March, 1934, when libellant and respondent again took up residence on the farm. During the time the parties lived with libellant's grandmother, libellant's poor health prevented his obtaining steady employment and the family was supported by the grandmother and by contributions from libellant's mother. After the separation, which occurred in 1935, respondent returned to her parents and continued to live with them, while libellant remained on the farm a short while and then went to reside with his mother and did not again make his home with his grandmother. Respondent secured employment and maintained her children, but received nothing from libellant except sporadic payments under an agreement for support entered into with him in settlement of a prosecution for failing to provide for his family. Following the separation the children lived intermittently with libellant's grandmother and were educated largely in the Herminie schools. Respondent was a frequent visitor at the farm, but libellant was never there on the occasion of any of the visits.

Concerning the circumstances of the separation libellant testified that one evening in February or March, 1935, he returned to the farm and found that respondent had gone, without leaving any note explain-

ing the reason for her departure and without having given him previous notice of her intention to withdraw. Libellant knew of no cause for respondent's leaving, he said, and he did not see her again until some time later, when she had him arrested for non-support. After the separation the parties, according to libellant, hardly ever spoke, and he said that while he suggested a reconciliation he "didn't push the matter too hard." Respondent was expecting a child in May, 1935, although it was not born until June 18, and in the middle of April, she testified, she returned to her parents' home in preparation for her confinement. The withdrawal from the farm at that time was on the advice of libellant's grandmother, because it was not safe to bear the child there, as no competent physicians were available. Respondent stated that she was driven to her parents' home at Monaca by libellant's uncle, and that libellant put her suitcases into the car and accompanied the party as far as Herminie, where he left them to pursue some object of his own. Prior to the separation she and libellant were "getting along", respondent said, and she did not intend to leave him permanently, but after the birth of the child libellant never suggested a resumption of relations and although respondent proposed the establishment of a home, that step was never taken.

Libellant's testimony, even if credited, standing alone, is insufficient to support a decree, amounting, as it does, to a mere statement that respondent left the place where the parties were cohabiting and that he knew of no cause for her departure. The evidence must disclose to the court all the circumstances leading up to and following the separation, so that an informed judgment can be passed on the question whether the living separate and apart was a product of respondent's continuing perversity or the result of the encouragement, procuration, or consent of libellant. *Price v. Price*, 83 Pa. Superior Ct. 446; *Olson v. Olson*, 27 Pa. Superior Ct. 128. Furthermore, libellant's testimony

is contradicted in its essential features by respondent's version of the separation incident, and as there are no convincing circumstances impelling a disregard of respondent's account, there is at best a doubtful balance of the evidence which is ineffectual to meet the burden of producing clear and satisfactory proof to justify relief. *Cobaugh v. Cobaugh,* 146 Pa. Superior Ct. 521, 22 A. 2d 764.

Considering the record in its entirety, respondent's portrayal of the events seems generally the more credible. Her testimony is forthright and convincing and describes the more reasonable sequence of occurrences. Respondent's removal from the farm lacked the elements of wilfulness and malice, as her physical condition necessitated her presence at a place where competent medical attention was available, and the lack of adequate facilities for her care at the farm supplied the reasonable cause justifying her resort to the home of her parents where she could be properly attended. *Arnout's Estate,* 283 Pa. 49, 128 A. 661; *Neely v. Neely,* 131 Pa. 552, 20 A. 311; *Hare v. Hare,* 133 Pa. Superior Ct. 134, 2 A. 2d 507. As the withdrawal was not a wilful and malicious absence from the habitation in the first instance, the statutory period could not begin to run until there was conjoined with the physical separation of the parties the other necessary ingredient of respondent's manifested intention to desert, exhibited either by a refusal of libellant's bona fide offer to resume cohabitation or a repudiation of respondent's marital obligations communicated by her to libellant. *Laterza v. Laterza,* 124 Pa. Superior Ct. 103, 188 A. 89. Respondent never refused to return to libellant, nor did she indicate to him that an offer of reconciliation made in good faith would be fruitless. Libellant, by his own admission, "didn't push the matter" of establishing a home "too hard", and, for all that appears, he never actually maintained a residence away from his parents, even at the farm, at any time after the birth of the couple's third child.

Looking at the evidence from another point of view it is apparent that libellant at all times was agreeable to the separation and on this ground as well he is not entitled to a decree. The consent which will prevent a separation of the spouses from ripening into a cause of action in divorce after two years must be demonstrated by an actual participation in the withdrawal; a passive acquiescence or a failure to remonstrate is not sufficient. *McIntyre v. McIntyre,* 92 Pa. Superior Ct. 310. Although he now denies it, libellant did the only civilized thing possible under the circumstances when he assisted respondent to return to her parents' home, and we have no doubt he offered no protest when she left him. "We have held a number of times that where the husband consents to his wife's departure and helps her in the accomplishment of it, we may draw the conclusion that he is just as willing to have his wife go as she is willing to go and that the separation is consentable": *Maus v. Maus,* 80 Pa. Superior Ct. 428, 429. Libellant's callous disregard of his third child, in which he showed not the slightest interest, his complete indifference to his wife at the time of her last confinement and thereafter, and his failure to provide support, even for his children, until he was prosecuted, all point significantly to libellant's real attitude toward his family and his obligations. "This is not a case of a husband being deserted wilfully and maliciously, but it is a case which bears every earmark of a husband grown weary of the marriage bond seeking some excuse for its dissolution and well satisfied with the situation, which seems to offer the possibility of the desired freedom": *Shore v. Shore,* 107 Pa. Superior Ct. 566, 568, 164 A. 110.

Decree affirmed.