## Caldwell *v.* Caldwell, Appellant.

*Divorce—Desertion—Refusal of wife to live in home provided by husband—Evidence—Separation—Consent.*

A decree in favor of the husband on a libel for divorce for desertion will be sustained, where the evidence shows that the libellant and his two sons left the common domicile because respondent had kicked one of the sons down stairs; that when the libellant returned to live with her, she asked a policeman to eject him,

332, (1918).]    Syllabus—Assignment of Errors.

which request was refused; that on the following evening she locked him out; that she brought numerous legal actions against the husband to recover money with no justification; that he bought a house at a place selected by her, and moved there, but that she refused to follow him; and that she refused to talk with libellant, except in the presence of counsel, who with her acquiescence, demanded money.

The conclusion of the master and the court below that a great part of respondent's testimony was improbable, is entitled to some weight if it appears that the master saw the parties, and heard the testimony, and that the court was well acquainted with them.

The fact that a husband paid his wife forty dollars a month pursuant to an order of court, does not constitute a consent by the husband to the continuance of a separation.

The right of a husband to change his residence, and the obligation of the wife to follow him, is undoubted.

Desertion is proven when there is an unjustifiable refusal to resume the family relation in a common domicile persisted in for two years.

*Appeals—Assignments of error—Divorce.*

As the Commonwealth is an interested party in divorce proceedings, an appeal will not be quashed because the assignments of error are defective in failing to incorporate the final decree; they will, for the purpose of review, be considered as amended.

Argued April 13, 1918.  Appeal, No. 135, April T., 1918, by plaintiff, from decree of C. P. Indiana Co., March T., 1916, No. 140, awarding divorce in case of D. M. Caldwell v. Ella E. Caldwell.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Libel for divorce.

The case was referred to D. R. Tomb, Esq., as master, who after taking testimony reported in favor of awarding a decree for libellant.

Exceptions to the master's report were overruled by the court in an opinion by LANGHAM, P. J.

*Errors assigned* did not set forth the final decree of the court.

*E. Walker Smith,* for appellant.—To justify a decree of divorce, on the ground of desertion, there must be a clear intention to desert, wilfully and maliciously persisted in, without cause, for two years: Ralston's App., 93 Pa. 133; Power's App., 120 Pa. 320; Middleton v. Middleton, 187 Pa. 612; King v. King, 36 Pa. Superior Ct. 33.

*D. B. Taylor,* with him *Peelor & Feit,* for appellee.— The decree was proper: Van Dyke v. Van Dyke, 135 Pa. 459; Bauder's App., 115 Pa. 480; Crandall v. Crandall, 66 Pa. Superior Ct. 153; Hardie v. Hardie, 162 Pa. 227; Allen v. International Text Book Co., 201 Pa. 579.

OPINION BY WILLIAMS, J., July 10, 1918:

The parties to this action were married in 1890. Three children have been born. In 1907, respondent became subject to attacks of hysteria, and from the latter part of that year until October, 1908, was treated at various sanitariums for dementia, returning to the common abode, January 23, 1909. Libellant, and one of his sons, testified she treated the two boys harshly, kicking one of them down stairs on one occasion, which conduct resulted in libellant and his two sons withdrawing from the common domicile in 1909, the daughter remaining with her mother. December 10, 1909, libellant returned with his personal belongings, and respondent called a policeman to eject him from the house, which request however, was refused. A little later libellant left the house and when he returned the house was locked. He returned again and found the house deserted. He stayed over night and the next day. When he returned to the house the following evening, he found respondent there and the door locked so that he could not enter. December 18, 1909, libellant and respondent entered into an agreement that libellant should provide a home for the family in some town in western Pennsylvania to be selected by respondent. Pursuant thereto libellant

bought a suitable home in Grove City, the town selected by respondent, moved his furniture, and lived there long enough to register as a voter. Respondent, however, refused to leave Indiana. Libellant made numerous attempts to induce respondent to resume the family relation, the last being in January, 1916, but she refused to talk to him in the absence of her counsel. He met her in the presence of her counsel, who demanded money for her instead of discussing a reconciliation. As evidence of the hostility of respondent toward libellant, records in numerous suits, brought against him, were introduced. She had him arrested for nonsupport in 1910, resulting in his paying her $40 a month under an order of the court. She brought three separate suits for damages, alleging conspiracy, against him and the doctors under whose advice she had been sent to sanitariums. Judgment was entered in favor of the defendants. January 5, 1916, she sued libellant in assumpsit on the agreement of December, 1910.

Respondent's testimony tended to contradict much of the evidence produced by libellant. We cannot, however, give credence to her protestations of a desire to live with libellant, or of her deep love for him, and for her children, when her course of conduct was directly to the contrary. Her son testified she kicked him down stairs; she says he fell down. She says she was improperly sent to an insane asylum; the judgment of the Court of Common Pleas of Indiana County conclusively shows she was properly sent: Field v. Field, 67 Pa. Superior Ct. 355. She says she wanted to be reconciled but refused to talk with libellant except in the presence of counsel, who, with her acquiescence, demanded money. She asked policemen to eject her husband from his own home when he returned to live with her; she locked him out next evening; she brought numerous legal actions to recover money with no justification. He bought a house at a place selected by her and moved there; she refused to follow. In view of her actions, her testimony lacks pro-

bative force.    The master and the court below concluded that a great part of respondent's testimony was improbable.    Their conclusion is entitled to some weight, as the master saw the parties and heard the testimony, and the court was well acquainted with them: Crandall v. Crandall, 66 Pa. Superior Ct. 153.

Do the facts make out a case of desertion?

The gradual emancipation of woman from the restrictions and disabilities of coverture, up to 1890, is well outlined in Loftus v. F. & M. N. Bank, 133 Pa. 97.    Since that time her rights have been enlarged: see Acts of 1893 and 1913.    The Intestate Act of June 7, 1917, P. L. 429, places the husband and wife on a parity as to inheritance from each other.    The enabling acts, operating to the advantage of the wife, have also operated to her disadvantage.    The law makes no distinction between persons sui juris, and facts which establish desertion as to one must apply with equal force to the other.

Nothing appears in the facts proven indicating consent by the husband to the continuance of the separation. The fact that he paid respondent $40 a month pursuant to an order of court, does not constitute consent: Bauder's App., 115 Pa. 480; Van Dyke v. Van Dyke, 135 Pa. 459.    The agreement of reconciliation of 1909 was not carried out due to respondent's refusal to go to the home provided for her under it.    That it was an agreement of separation, we cannot agree.

The letters rejected as evidence were irrelevant as they could not question the judgment of the court as to the necessity for respondent's confinement in institutions for the correction of nervous ailments.    The letter of her counsel relative to the agreement of 1909 would not have changed our idea of the facts, and its rejection did respondent no harm.

The right of the husband to change his residence and the obligation of the wife to follow him is undoubted: McBrien v. McBrien, 63 Pa. Superior Ct. 576; Monahan v. Auman, 39 Pa. Superior Ct. 150; Beck v. Beck, 163 Pa.

649.   In this case there was an agreement that a new home was to be established.

Desertion is proven when there is an unjustifiable refusal to resume the family relation in a common domicile, persisted in for two years.   We think the libellant made out a case of desertion when he proved that respondent refused to go to Grove City to live with him, and that she subsequently refused to have converse with him except through her attorney, giving him no hope of accomplishing a reconciliation.

Appellee's motion to quash would ordinarily be sustained, as the assignments of error are defective, but as the Commonwealth is an interested party, they will be considered as amended for the purpose of review.

The decree is affirmed.