## Hahn's Estate

*William S. Hudders,* for petitioners.

*Isadore Rapoport* and *William B. Butz,* for respondent.

GEARHART, P. J., September 25, 1941.—The case before us concerns certain questions of distribution arising in the partition proceeding in the above estate.

William G. Hahn died, intestate, February 8, 1937, leaving to survive him a widow, Lulu M. Hahn, who inherited one half of his real estate, and a brother, Adam G. Hahn, and a sister, Hattie G. Hahn, who inherited the other one half of the real estate, equally.

Included in decedent's real estate was his home located at 1711 Hamilton Street, Allentown, Pa., which his widow occupied from the date of his death until the present time; and it is admitted that she paid no rent. for the use and occupation of the home. In addition thereto, there were other parcels of real estate described in the petition for partition.

Shortly after decedent's death, his widow was ap-

pointed administratrix of his estate; and in addition to dealing with the personal property she managed all the real estate, collected the rents, and paid all taxes and repairs, including those on the home.

On February 17, 1940, she filed her first and partial account, which was later made a final account. In that account, her then counsel mingled real estate indiscriminately with the personal estate, and in view of the fact that the personal property was sufficient to take care of the debts we ruled that we would not deal with the questions pertaining to the real estate as it had no proper place in the account.

In the meantime, on April 18, 1940, the collateral heirs filed a petition for an inquest in partition to divide all the real estate, alleging that the widow has been in possession of 1711 Hamilton Street since decedent's death. An answer was filed to this petition by the widow, in which she joined in the inquest for the partition, admitting that she was in possession of the home, but denying any liability for rent.

Subsequently, the parties sold several of the premises involved in the partition proceedings as to which parcels the proceedings were discontinued, leaving for disposition only 1711 Hamilton Street, a garage property in Shamokin, and a lot in Monroe County. On January 21, 1941, the inquest appointed by the sheriff appraised these three parcels, and on January 30, 1941, the return of the inquest was presented with the finding that the property described could not be parted and divided without prejudice to, or spoiling, the whole, and that the valuations were as there stated. Accordingly, a rule was issued to all parties interested to appear and accept or refuse the real estate or any purpart thereof as set forth in the valuations. The rule was made returnable February 13, 1941, and at that time the widow, Lulu M. Hahn, in the absence of a bid to take the property 1711 Hamilton Street at a value in excess of that placed thereon by the jurors, elected to

accept the premises at the valuation of $14,500. The property was awarded to her upon the payment to the other parties of their proportionate share of the value of the property.

At the request of the widow, Lulu M. Hahn, Adam G. Hahn and Hattie G. Hahn agreed to convey to her their respective interests in the lot of the Brookside Recreation Club in Monroe County at the agreed nominal valuation of $1. The Shamokin property was sold privately on February 13, 1941.

The important questions for solution therefore concern premises 1711 Hamilton Street, and they revolve around the question whether or not the widow can be compelled to pay a reasonable rental for the premises during the period of her occupancy and the further question concerning expenditures made on the same property for repairs and taxes.

On May 29, 1941, William S. Hudders, Esq., as trustee, presented a further petition in the partition proceedings raising, among other things, the question of rent for premises 1711 Hamilton Street. To this petition the widow filed her answer in which she denied any liability for rent. She also alleged therein that, since the filing of the first and final account, she incurred expenses for repairs to the premises in the amount of $979.88, and taxes, insurance, and water rent in the amount of $650.12, including penalties on taxes, to the date of the answer. The widow claimed in her answer that in creating these expenses she acted as agent for all parties interested in the estate. Upon this petition and answer testimony was had.

Section 20 of the Orphans' Court Partition Act of June 7, 1917, P. L. 337, 20 PS §1284, is as follows:

"In case of partition of real estate now or hereafter held by two or more persons as tenants in common, where one or more of said tenants shall have been or shall hereafter be in possession of said real estate, the parties in possession shall have deducted from their

distributive shares of said real estate the proportional part of the rental value thereof to which their cotenant or cotenants are entitled for the time such real estate shall have been in possession as aforesaid."

This act, so far as it relates to partition, is taken from section 1 of the Act of June 24, 1895, P. L. 237, which is repealed by the present Orphans' Court Partition Act so far as it relates to partition (See 68 PS §101).

Counsel for the widow argues that the widow is not a tenant in common with the collateral heirs in the ownership of the real estate, and hence cannot be compelled under section 20 to contribute her proportionate share of the rental value thereof. He admits that under the Intestate Act of June 7, 1917, P. L. 429, 20 PS §1, the widow has inherited a one-half interest in fee to the home, and the collateral heirs have inherited the other one half. Counsel, while he does not specify what the nature of the holding is that the widow has, does argue that the widow is not a tenant in common and that section 20 does not therefore apply. For this proposition he relies on Connelly's Estate, 263 Pa. 54. In that case it appears that the decedent died in 1913, leaving to survive him his widow, Mary J. Connelly, and two sons by a former wife, aged respectively 11 and 13 years. He owned a hotel in which the widow and the two sons lived until the widow's death on October 8, 1916. During this time the widow conducted the hotel and supported and maintained the two sons. The guardian of the minor sons, after the death of the widow, presented their claim for the widow's use of the hotel. The auditor disallowed the claim and, on exceptions filed, the lower court dismissed it and in its opinion stated (p. 55):

"As pointed out by the auditor, the weight of authority is that under the intestate laws of Pennsylvania the widow is not a tenant in common with the heirs. Therefore, her occupancy of the premises in question

created no obligation to account to the heirs of the husband for the rental value thereof. Besides, the heirs occupied the premises jointly with her. They were fed, clothed and educated out of the profits of the business which the decedent conducted in the premises. The master's findings show that the decedent expended in their maintenance and education a sum equal to or in excess of their share of a fair compensation for the use of the premises or the fair rental value thereof.

"We are unable to see how the claim can be sustained, either in whole or in part, and the exceptions will accordingly be dismissed."

The Supreme Court affirmed the decree on the opinion of the lower court.

Counsel for the widow also cites Fee's Estate, 18 Dist. R. 391 (1909), which in turn cites Kelley et al. v. Kelley, 13 Phila. 179, for the proposition that the widow of an intestate is not a tenant in common with the collateral heirs and as such is not liable for use and occupation. More will be stated hereinafter with respect to Kelley et al. v. Kelley. And, still another case which counsel for the widow cites is Battersby's Estate, 29 Dist. R. 221. In that case the decedent died prior to the passage of the Intestate Act of June 7, 1917, P. L. 429, and it was sought to charge her for use and occupation. Judge Gummey, who wrote the opinion, stated (p. 222):

". . . Emma F. Battersby, who was in possession, was the decedent's widow, and as he died prior to the passage of the Intestate Act of June 7, 1917, P. L. 429, she receives no portion of the principal of the fund, her interest being only a life estate in one-third thereof; and, further, that under the intestate laws of Pennsylvania as then in force, it has been held that a widow is not a tenant in common with the heirs of lands of which her husband died seized and not liable for use and occupation: See Connelly's Estate, 263 Pa. 54; Fee's Estate, 36 Pa. C. C. Reps. 408."

It is to be observed that Judge Gummey, while not called upon to decide whether a widow is a tenant in common with the other heirs since the passage of the Intestate Act of 1917, nevertheless took pains to point out that, under the law as it existed prior to 1917, the widow receives no portion of the principal and that under the intestate laws of Pennsylvania, which were in force before 1917, the widow was not regarded as a tenant in common, citing Connelly's Estate and Fee's Estate, to which we have already made reference.

Counsel inform the court that, although they have made a diligent search, they have not been able to find a case deciding the precise question before us. That is—whether or not a widow, since the passage of the Intestate Act of 1917, must be regarded as a tenant in common with the other heirs and as such liable for use and occupation. It is reasonably clear from the decisions we have cited that the weight of authority in this State was that a widow prior to the passage of the Intestate Act of 1917 was not a tenant in common and, therefore, not liable for use and occupation of the real estate.

The opinion of Judge Thayer found in Kelley et al. v. Kelley, supra, painstakingly reviews the history relating to a widow's dower rights both at common law and under the statutes in the estate of a deceased husband. In that case it was pointed out that action of account render against the widow to recover shares of rentals and profits during her occupancy could not be maintained because she was not a tenant in common with the other heirs. Judge Thayer, after pointing out that at common law the widow had neither seisin or right of entry until after assignment of her dower, continued (p. 180) :

"The widow's interest under the intestate laws is by no means the same thing as dower at common law. No writ of dower lies for the share given by the intestate laws where the husband dies seized: *Seider vs.*

*Seider*, 5 Wh. 208; *Thomas vs. Simpson*, 3 Barr, 60; *Taylor vs. Birmingham*, 5 Casey, 306; *Musselman's Appeal*, 15 Smith, 480. She must proceed under the partition acts to have her share assigned to her. She cannot bring ejectment, nor can ejectment be brought against her, for she has neither seisin nor right of possession before her interest is set aside: *Gourley vs. Kinley*, 16 Smith, page 271. Her right under the intestate laws, as was pointed out by Duncan, J., in *Pringle vs. Gaw*, 5 S. & R. 536, is less favorable to her seisin than was her dower at common law. If then at common law she had neither seisin nor right of entry until after assignment of her dower, it is very clear *a fortiori* that she has neither seisin nor right of entry under the intestate laws before her share under these laws is set aside. Accordingly it has been successively held in Pennsylvania that she can neither maintain an action of ejectment nor a writ of partition before her share is set aside . . . . . . . . Nor can those actions be maintained against her.

"It follows necessarily that if the defendant has neither seisin nor right of entry in common with the heirs she is not tenant in common with them, and so is not within the statute of Anne, for unity of seisin is essential to a tenancy in common. She is not therefore liable to this action as tenant in common with the plaintiffs.

"Nor is there any hardship in this conclusion, for it was the duty of the plaintiffs, if they did not acquiesce in her remaining in possession, to have had her interest appraised and charged upon the premises by proper proceedings under the acts relating to the partition and valuation of the real estate of intestates. If the heirs wish to enjoy exclusive possession or to get the rents and profits, they must proceed under the partition acts to have the widow's share ascertained and secured to her. The Supreme Court have in more than one case reprobated the attempt of the heirs to put her

out of possession before they have first proceeded to secure her rights by due course of law . . ."

It can readily be seen from this opinion that the reason for holding that the widow is not a tenant in common with the other heirs no longer exists. That is, since the passage of the Intestate Act of 1917 (see sections 1(*a*) and 1(*b*), 20 PS §1) the surviving spouse takes one half or one third (depending on the number of children) of the real and personal estate, absolutely. Her rights in her husband's estate vest at the moment of his death: Fitzgibbon's Estate, 276 Pa. 105, 106; Knox's Estate (No. 2), 328 Pa. 188, 190.

The Intestate Act of 1917 relates to the descent and distribution of the real and personal property of persons dying intestate after December 31, 1917. Section 1(*a*) of the Intestate Act makes the rights of husband and wife the same and eliminates the distinction between real and personal property in this regard, making no distinction whatsoever with respect to sex. Husband and wife are on a parity as to inheritance from each other: Caldwell v. Caldwell, 70 Pa. Superior Ct. 332; Schoch's Estate (No. 1), 271 Pa. 158; Miles' Estate, 272 Pa. 329.

Under the Intestate Act the shares which the surviving spouses take are of precisely the same character and quality as, and, therefore, fall into the same category with, the other shares and interests vesting in the decedent's descendants or collateral heirs: Remick, Pennsylvania Orphans' Court Practice (3rd ed.), vol. II, sec. 332; Dodd's Estate, 1 Wash. Co. 236, 244, 245.

Prior to the passage of the Intestate Act, the courts had considerable difficulty in defining the nature of the widow's interest in her husband's estate. In 1898 in Kunselman et ux., etc., v. Stine, 192 Pa. 462, Justice Fell remarked (p. 464):

"Difficulty has been experienced in all attempts to define the precise nature of the interest which a widow takes in this state in lieu of her dower at common law.

The cases however agree that it is an interest in land, and not a mere charge or lien; and that the character of her interest is not changed by the act of 1832, which prescribes the form of ascertaining and assigning it, and changes somewhat the method of its use and enjoyment . . ."

(See also Trickett on Law of Partition in Pennsylvania, pp. 135, 136.)

Whatever the nature of the widow's interest prior to the passage of the Intestate Act of 1917 may have been, it is now reasonably clear that under the act she takes an absolute interest in her husband's real and personal property which, in its nature, is of the same quality as that of the other heirs. As has been indicated above, the reason for holding that she is not a tenant in common with the other heirs no longer exists. The interest which she takes under the Intestate Act of 1917 in the real estate of her husband is that of a tenant in common with the other heirs. This being so, the provisions of the Orphans' Court Partition Act of June 7, 1917, P. L. 337, 20 PS §1284, apply to the widow as a cotenant. Section 20 provides:

"In case of partition of real estate now or hereafter held by two or more persons as tenants in common, where one or more of said tenants shall have been or shall hereafter be in possession of said real estate, the parties in possession shall have deducted from their distributive shares of said real estate the proportional part of the rental value thereof to which their cotenant or cotenants are entitled for the time such real estate shall have been in possession as aforesaid."

It has been agreed by respective counsel that, if the court finds rent is to be paid, the termination date shall be February 13, 1941. Counsel are not in accord as to when the rent, if any, should start. We are of the opinion that rent should be paid from the date of the death of the decedent, which was February 8, 1937. The widow has had the enjoyment and exclusive possession of the premises from that day forward. While counsel

has contended that his client was never apprized of the fact that the cotenants intended to charge rent, we find as a fact that she was informed as early as December 16, 1937, that rent was expected; and that, when she filed her account as administratrix in the estate of her deceased husband, among the exceptions filed to her account was her failure to pay rent for the premises in question. In short, in this case the presumption that possession of one tenant is presumed to be for the benefit of all has been rebutted by the evidence.

On the question of what is a reasonable rental value of the premises, both sides called real estate experts. The respondent called Myron J. Fetzer, who fixed a reasonable value of the premises at $50 per month for 1937; $50 per month for 1938; $55 per month for 1939; $60 per month for 1940; and $65 per month for 1941. Mr. Charles O'Brien, another of respondent's witnesses, testified that a reasonable rental would be $55 per month for 1937; $60 per month for 1938; $60 per month for 1939; $65 per month for 1940; $70 per month for 1941. The testimony of respondent's witnesses was to the effect that in 1937, 1938, and 1939, large homes of the type here considered could not easily be rented and that the premises in question had declined somewhat as a residential section because of a main highway passing the premises and some business places which had been erected in the neighborhood. On the other hand, petitioner called Martin J. Reinsmith, a real estate agent, who testified that in 1937-1938 $80 per month was a fair rental; $90 per month for 1939; $100 per month for 1940-1941.

In Everly v. Shannopin Coal Co., 139 Pa. Superior Ct. 165, 171, the court stated:

"The rental value or rather market rental value of the property used depends upon what rent it will command in the open market, not the purpose for which rented, but rather what the plaintiff could have gotten

for it in the market had defendant not been in possession . . ."

"The burden is upon the tenant who claims his share to prove by reliable data the rental value of the premises occupied by his co-tenant." (Syllabus).

It is to be observed that the testimony of all the experts placed the rental value for the years 1937-1938 at an amount somewhat lower than that for the subsequent years. This variance was accounted for by reason of the fact that, admittedly, during the earlier years the real estate market and the demand for houses was not as active as in the subsequent years. Giving consideration to the testimony as produced, we find that a reasonable rental for the years 1937-1938 should be calculated at the rate of $60 per month; for the years 1939-1940 at the rate of $65 per month; for the year 1941 at the rate of $75 per month.

Another matter which is a subject of contention is the purchase of a new gas heater by the widow-tenant at an outlay of $732.57. Petitioners argue that respondent should personally bear the cost of this heater because she had it placed in the home without their knowledge or consent; and they further argue that the circumstances under which the heater was installed in the home indicated a design upon the part of respondent to improve the home for her personal benefit at the expense of the co-tenants. They point out that they had no knowledge of the installation of the heater but that respondent did and, that when she installed the heater, she intended to bid in the property at the return of the inquest upon the rule to refuse or accept. As has been stated, she accepted the property at the valuation placed thereon by the jurors of inquest. Testimony shows that on the very day, namely, January 17, 1941, when the jurors visited the premises to carry out their duties the home was cold and chilly and the widow complained about the break-down of the gas heater. It seems that the jurors took the question of the replacement of a new gas heater into consideration and fixed the valuation

of the property accordingly. It is equally true that the gas heater was worn out and had to be replaced immediately to prevent the freezing of the pipes and make the home reasonably fit for occupancy.

As we understand petitioners' position, they are not alleging that the heater was not worn out, nor are they alleging that too much was expended for the heater. Their complaint is that they had no knowledge of the installation of the heater and, therefore, the widow should stand the entire cost. Under all the facts in the case, we cannot find as a fact that the widow placed the heater in the home in bad faith. It was a matter that had to be attended to and it was for the common benefit of the owners. In the past she had managed the real estate, made repairs and expenditures without consulting the co-tenants, and here was a case where on a very cold day the old heater which had been repaired a number of times finally broke down. It was necessary that she act promptly and have the difficulty remedied. The job would have had to be done whether the widow occupied the premises or anyone else, and more than that, if the widow had refused to bid in the property at the appraised value, it would have gone to public sale. If at the public sale the property had brought less, certainly petitioners would not now be complaining. On the other hand, petitioners had their day in court, and if they had decided to offer more for the property than the valuation fixed by the jurors they could have done so. While they now allege that they had no knowledge of the installation of the heater, we are of the opinion that it was within their means to have discovered it; and if they had been interested in bidding in the property would have done so. Under the facts as they exist, we are not prepared to saddle all of the costs on the widow. This exception is dismissed and the cost of the heater will be paid out of the funds on hand.

With respect to taxes and other repairs made by

respondent from the date of the death of her husband up to the time of the disposal of the property, these will also be paid out of the common fund. Repairs which are reasonably necessary for the benefit of the common estate and made in good faith are proper items of expense: 62 C. J. 479.

"One tenant in common is entitled to reimbursement from the others for taxes on the common realty, advanced by him": Devlin's Estate, 17 Pa. C. C. 433.

Another matter to be disposed of is that of counsel fees. Section 35 (a) of the Orphans' Court Partition Act of June 7, 1917, P. L. 337, provides:

"The costs in all cases of partition in the orphans' court, with a reasonable allowance to the petitioners for counsel fees, to be taxed by the court, or under its direction, shall be paid by all the parties in proportion to their several interests."

Counsel for petitioners has set forth on a separate petition what services he has rendered to this estate. We are familiar with the services and, accordingly, allow him a fee of $300 to be paid out of the fund.

A dispute has arisen as to whether or not the expert witness fees should be paid out of the fund. We are of the opinion that each side should pay the fee of their expert witnesses and only the ordinary and usual fees be allowed for the witnesses. This, together with the costs of the proceedings, will also be paid out of the fund.