Taylor *v.* Taylor, Appellant.

442

·Before KELLER; P.· J.,· CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John Francis Williams,* for appellant.

*Daniel Marcu,* for appellee.

OPINION BY RHODES, J., December 11, 1940:

The libellant in his libel in divorce charged his wife, the respondent, with cruel and barbarous treatment and indignities to the person. Pursuant to a rule taken a bill of particulars was subsequently filed by libellant; to this respondent filed her answer. The case was referred to a master who, after 18 meetings, filed his report recommending a decree upon the ground of indignities to the person. The master concluded that the charge of cruel and barbarous treatment had not been sustained by libellant. The court below dismissed excep-

tions to the master's report, and adopted the findings and conclusions of the master. The court thereupon entered a decree of absolute divorce in favor of libellant and against respondent. Respondent has appealed.

We have examined very carefully the record of about 1,000 pages, as we are obliged to express an independent conclusion thereon, there having been no jury trial. We recognize that the recommendation of the master who heard and saw the witnesses is entitled to the fullest consideration although it is only advisory and not controlling. *Golden v. Golden*, 134 Pa. Superior Ct. 211, 216, 3 A. 2d 941.

The record is clearly lacking in such proof as would sustain a charge that respondent by cruel and barbarous treatment endangered libellant's life. Libellant's own testimony does not disclose such actual personal violence or reasonable apprehension of it as to endanger his life and render cohabitation unsafe. To this extent we agree with the master and the court below. If conduct and threats are shown which may not amount to treatment endangering life, they may be considered in connection with other conduct of the respondent under the charge of indignities.

The law does not define indignities, but we have said that "they may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient": *Sharp v. Sharp*, 106 Pa. Superior Ct. 33, at page 35, 161 A. 453, at page 454. We have not attempted to lay down a general rule as to what indignities render the condition of the injured party intolerable and life burdensome as the facts and circumstances of each case must determine. *Mentser v. Mentser*, 136 Pa. Superior Ct. 582, 589, 7 A. 2d 541. However, to sustain the charge of indignities there

must be evidence from which settled hate and estrangement may be deduced, and the law contemplates a course of conduct or continued treatment, not single acts separated by long intervals of time. Moreover, slight altercations, incompatibility, or temporary irritation are not sufficient to justify the granting of a divorce on such a ground.

The burden was upon libellant to prove his case by clear and satisfactory evidence, and there must be a preponderance of the evidence in his favor. *Murfit v. Murfit,* 134 Pa. Superior Ct. 327, 332, 3 A. 2d 1020. It must clearly appear that libellant was the innocent and injured party; and more than a doubtful balance of evidence is necessary to sustain a decree in his favor. It is true that a decree may be supported by the testimony of libellant alone, but if his testimony is contradicted and shaken by the respondent, and there be no convincing circumstances which would warrant a disregard of the contradictory evidence, a case has not been made out. *Twaddell, Jr., v. Twaddell,* 95 Pa. Superior Ct. 429, 432.

When these legal principles which we have briefly stated are applied to the evidence in this case, it becomes obvious that the libel must be dismissed.

Libellant and respondent were married on November 23, 1933, in Philadelphia, Pa. No children were born as a result of the marriage. Libellant is 37 years of age, and a dentist by profession. Respondent is 39 years of age. This was a second marriage for both parties; libellant had been divorced, and respondent's first husband had died. After their marriage they resided in Philadelphia until June, 1939, when they went to Cutler, Ohio, where they separated in August of that year. After the separation libellant continued to reside in Philadelphia, and thereafter, with the exception of a few weeks while visiting in Washington, D. C., respondent has likewise lived in Philadelphia.

The master, after hearing the witnesses, prepared an

extensive report recommending a decree upon the ground of indignities. Although it is in no way controlling, it is nevertheless entitled to the fullest consideration. But we look in vain in this record for convincing and substantial evidence to sustain either of libellant's charges. As in too many appeals of this type, we find that much of the testimony on both sides has no relevancy to the charges upon which a divorce is sought, and it is difficult to understand why the record should be so encumbered. The master repeatedly recognized that the testimony was going far afield, but the digressions nevertheless continued.

Libellant complains of respondent's attitude toward intercourse. He mentions but two instances when it was refused. Respondent denies one and plausibly explains the other. Refusal of sexual intercourse is not cruelty, nor does it constitute indignity to the person. *McCommons, Jr., v. McCommons,* 85 Pa. Superior Ct. 323, 328; *James v. James,* 126 Pa. Superior Ct. 479, 488, 191 A. 191. Libellant also testified that he wanted children, and that respondent refused to bear children. The mere refusal to bear children does not constitute an indignity, since the refusal of sexual intercourse is no cause for divorce. However, in this respect the libellant is contradicted by the testimony of respondent. Respondent is in some degree corroborated by her physician, Dr. Grace Kimbrough, who testified, as did respondent, that respondent went to the Women's Hospital of Philadelphia on November 1, 1936, for an operation in order that she might bear children. Other conduct of respondent of which libellant complains was her refusal to wash his white trousers, and to get his meals. He testified that during the first six months of their married life respondent did not get his breakfast. But this was explained by respondent, as was the single instance when she refused to wash a pair of white duck pants for him. Libellant himself testified: "Outside the breakfast incident, Mrs. Taylor never refused to prepare the

meals." Respondent's failure to get breakfast for a limited period of time during which somebody else was available for this purpose falls far short of an indignity to the person. As we said in *Schreiber v. Schreiber*, 99 Pa. Superior Ct. 123, at page 126: "Marriage is for better or worse. If the wife sleeps late in the morning and is remiss in her household duties, that is not in itself a ground for divorce." The testimony of libellant to the effect that respondent was extravagant and ran up bills is not convincing. Libellant further testified that respondent was discourteous to his patients. This respondent emphatically denied, and libellant called no one to corroborate him. The various threats and acts of physical violence which libellant alleges all took place, according to libellant, when no one was present. That respondent was profane and called libellant vile and opprobrious names was the testimony of libellant himself. It is significant that the two witnesses called by libellant who should have been in a position to have corroborated some of libellant's allegations gave no material corroborative testimony. With the one, libellant and respondent lived for a time, and the other, for a period, was a boarder in their home. Libellant also called as his witness the brother of respondent, who likewise had lived in the home of libellant and respondent. This witness likewise gave no corroborative testimony in any material respect; nor did he testify to any facts which would tend to support libellant's charges against respondent.

Respondent's testimony as to what transpired during the time she and libellant lived together is entirely different from the version given by libellant. She either denied libellant's accusations or gave her explanation of what took place on the various occasions concerning which libellant testified. In some instances she was corroborated by her witnesses.

In the summer of 1939 libellant took respondent to Cutler, Ohio, where he placed her in a house described as

a shack. It was located in the back woods of Ohio, a considerable distance from the nearest neighbor. It had no improvements of any kind. Libellant remained there with respondent about twenty-four hours, and then returned to Philadelphia and closed their apartment on South Street. He made a second trip to Ohio, and remained there two or three days, and then left for Philadelphia, since which time they have not lived together. She eventually returned to Philadelphia. During this period she wrote libellant a number of letters. In reply to one he stated: "In your next paragraph I am somewhat confused because you are asking what provisions I am making for you here [Philadelphia]. I am making none whatever."

After the marriage of libellant and respondent they lived for some time on Haverford Avenue in Philadelphia. A property was then purchased on Girard Avenue. This was placed in the name of respondent. Libellant had respondent execute a deed for this property, prior to her going to the hospital in the fall of 1936, under circumstances which it is not necessary to detail. While respondent was in the hospital, and without her knowledge, libellant proceeded to make material alterations to the property, converting it into three apartments. Upon her discharge from the hospital libellant and respondent were obliged to live at the home of a Mrs. Lewis, a witness who testified for libellant, until one of the apartments was completed. The other two were rented. After living in the apartment for a time libellant decided to move to an apartment over his office on South Street. Against respondent's desire libellant forced this change, and rented the apartment on Girard Avenue in which they had lived. From South Street libellant finally concluded to move respondent to Cutler, Ohio, and then closed the apartment in which they had been living. Our examination of the evidence leads us to the conclusion that libellant's conduct does not convincingly establish that he was the innocent and in-

jured party. While living in the apartments on Girard Avenue and South Street libellant seldom slept with respondent, and rarely ate with her. Seldom did he go out with her socially, or show any desire whatsoever for her companionship. Then he objected to her belonging to any clubs and attending club meetings; and he himself testified that he "chastised her for not turning off the heat and shutting down the thermostat" in their apartment. Any wife would naturally resent such actions. His handling of the Girard Avenue property and his actions and conduct while they were living there are indefensible. While on South Street his actions and conduct can be no more favorably described.

No purpose would be served by a recital of all the controversies and respective accusations which make up this record. It suffices to say that the conduct of both was not all that could be desired or such that would be conducive to a pleasant and harmonious married life. But the burden was on libellant to establish the charges which he made in his libel by clear and satisfactory proof, and by a preponderance of the evidence. In our judgment he failed to meet these requirements. The uncorroborated testimony of libellant was contradicted and shaken by that of respondent and her witnesses, and we find no convincing circumstances warranting a disregard of the contradictory evidence. The most that can be said is that there was a doubtful balance of evidence in this case. The law requires more than libellant has produced to warrant the severance of the marriage relation.

The decree of the court below is reversed, and the libel is dismissed.