## Mosher, Appellant, v. Mosher.

Argued October 17, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Joseph Newman,* for appellant.

*John Lamon, Sr.,* with him *John Lamon, Jr.,* for appellee.

OPINION BY CUNNINGHAM, J., July 23, 1942:

In this divorce action libellant sought an absolute divorce from his wife on the ground of indignities to his person; the charge of cruel and barbarous treatment also contained in the libel was withdrawn at the first hearing. The master submitted a comprehensive and detailed report in which he concluded libellant had failed to make out a case entitling him to a decree and recommended the libel be dismissed; in a per curiam opinion the court below adopted the recommendation of the master; this appeal is by the libellant from the decree dismissing his libel.

The master held twenty meetings resulting in a record of 861 printed pages, replete with repetitious, immaterial and irrelevant testimony. His report was filed a year and seven months after the institution of the proceeding. This case is another example of the methods criticized in *McDevitt v. McDevitt,* 148 Pa. Superior Ct. 522, 25 A. 2d 853.

Our examination of the testimony has led us to the independent conclusion that the master and court below correctly disposed of the issues raised by the parties.

Viewing the record as a whole, it is clear this husband and wife lived a reasonably normal married life for twenty-five years and that the reef upon which their marriage foundered was the almost inexplicable infatuation of libellant with a woman entirely outside of their social circle.

The principles of law by which the disposition of this

case must be guided were set forth at length in *Mathias v. Mathias*, 114 Pa. Superior Ct. 444, 174 A. 821, and cases there cited; they need not be repeated here.

The parties were married in Jackson, Michigan, November 12, 1912, and lived together continuously for twenty-seven years, or until July 25, 1939, when libellant surreptitiously packed his clothing and left the common home. His libel was filed on the 19th of the following month. Two daughters were born of this union; one died in infancy and the other, twenty-one at the time of the hearings, was attending a mid-western university. Both parents very properly refrained from calling her as a witness.

Libellant, an engineer, had graduated in Naval Architecture at the University of Michigan. At the time of their marriage libellant was twenty-four years of age and respondent twenty-three. Immediately thereafter libellant obtained employment in the Philadelphia Navy Yard at a salary of $85 per month and when the present libel was filed was employed as an engineer by the Atlantic Refining Company at a salary of over $5000 per year.

In 1924 they built their home at 218 Highland Avenue, Lansdowne, Pa., where, with the exception of extended business trips to Texas and other states, they lived until their separation. Between December of 1936 and April 1939, libellant was chief engineer for the Atlantic Refining Company in connection with the erection of a five million dollar refinery at Port Arthur, Texas. During its construction the parties lived there, with the exception of visits by respondent to her parents in Michigan and to their permanent residence in Lansdowne.

It was averred in the libel, as well as in the bill of particulars, that the conduct of respondent which libellant charges constituted indignities "began on or about February 15, 1937, and continued until on or about

July 25, 1939." Many of the charges to which libellant testified, however, were general and covered the entire period of their married life.

For instance, libellant complained that respondent "had an unnatural aversion to sexual intercourse," was unwilling to bear children, and insisted upon the use of contraceptives. Little need be said of these charges; it is settled that refusal of intercourse is not a ground for divorce: *James v. James,* 126 Pa. Superior Ct. 479, and cases cited page 488, 191 A. 191; *Upperman v. Upperman,* 119 Pa. Superior Ct. 341, 349, 181 A. 252; *Taylor v. Taylor,* 142 Pa. Superior Ct. 441, 445, 16 A. 2d 651. Respondent, in her testimony, denied and qualified these charges to such extent as to render them of no importance. Moreover, she bore him two children.

Libellant also testified respondent continually nagged him and was of a domineering disposition. These charges were denied by respondent and were entirely too general and vague to support a decree. We deem it unnecessary to review in detail the numerous complaints made by libellant of incidents which occurred during their temporary residence in Texas and respondent's denials and explanations. None of them, or all of them put together, amounted to that "plain manifestation of settled hate and estrangement" which would render libellant's condition intolerable and life burdensome. To the credit of both parties it may be noted that there are no accusations of the use by either of profanity, vulgarity or abusive language.

Early in December, 1938, during the progress of the construction work in the south, libellant, while staying for a few days at the Bankhead Hotel in Birmingham, Alabama, met Miss Marion Phillips, an employee of the hotel, who was ambitious to become a Christian Science practitioner. Both libellant and respondent at the time of their marriage were Methodists. Libellant

asserts he became interested in Christian Science as early as 1936, but respondent insists his interest in that denomination had its inception in his meeting with Miss Phillips.

While returning by train to their home in Lansdowne, libellant told respondent of his "friendship" with Marion Phillips. Throughout the hearings libellant insisted it was purely platonic and based upon their common interest in Christian Science. The disclosure by libellant of his interest in Miss Phillips naturally resulted in heated discussions. On December 22, 1938, after matters seem to have been temporarily patched up, a joint letter was sent Miss Phillips in which respondent told her libellant had informed her (respondent) of his "flirtation" with the addressee and in which she appealed to Miss Phillips to "cast [libellant] from her thoughts" and quit writing to him. At the request of respondent, libellant added a postscript to the letter joining in the request that Miss Phillips cease corresponding with him.

Libellant's lack of good faith in this matter was shown by his admission that he did not quit corresponding with Marion Phillips, but sent her eight checks in amounts varying from $5 to $25, totaling $165, between May 1, and June 26, 1939. These checks, according to libellant's testimony, were sent her solely to assist her in her work as a Christian Science practitioner, and more specifically to be used for her first case, a Mrs. Hurd, her landlady. Libellant called Mrs. Hurd, who, although she corroborated the fact she was Miss Phillips' first case as a Science practitioner, also stated she received only $20 in cash from her by way of financial aid.

An additional charge made by libellant was that respondent had made repeated threats to commit suicide. The most definite testimony along this line was that on July 20, 1939, libellant saw respondent *writing notes*

addressed to him and their daughter and to her mother and brother in which she referred to her marital unhappiness, said she was "tired" and "broken hearted," and indicated an intention to end her life. These notes were not delivered; they were left on the desk. Moreover, they were written after libellant had told respondent, according to her testimony, that he did not love her any more than a total stranger.

In general, it may be said that practically all the incidents cited and relied upon by libellant were provoked by his own conduct. See *Sleight v. Sleight*, 119 Pa. Superior Ct. 300, 304, 181 A. 69; *Esenwein v. Esenwein*, 312 Pa. 77, 167 A. 350; *Davidsen v. Davidsen*, 127 Pa. Superior Ct. 138, 142, 191 A. 619; *Deutsch v. Deutsch*, 141 Pa. Superior Ct. 339, 344, 14 A. 2d 586.

The most serious charges were denied or explained by respondent and as to these there was little, if any, corroboration. Under such circumstances no more than a doubtful balance of the evidence is created and a case has not been made out: *James v. James*, supra; *LaClair v. LaClair*, 128 Pa. Superior Ct. 469, 478, 194 A. 224; *Taylor v. Taylor*, supra.

Considerable and conflicting testimony relative to the conduct and declarations of the parties subsequent to the filing of the libel was taken. It was of no material assistance in ascertaining the real reasons and motives which led libellant to withdraw from the home and institute this proceeding, except in so far as it was corroborative of his inclination to become interested in women other than his wife.

From a careful review of this record we are of opinion that libellant has not shown by clear and convincing proof that he, as the innocent and injured spouse, suffered such indignities to his person as would warrant the granting to him of a divorce upon that ground.

Decree affirmed.