Martin *v.* Martin, Appellant.

Argued April 16, 1944. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Harry E. Simmons,* for appellant.

*Walter E. Glass,* for appellee.

OPINION BY RENO, J.; July 19, 1945:

Respondent appealed from a decree in divorce recommended by the master and entered by the court below on the ground of indignities to the person, after an additional charge of desertion had been abandoned by libellant. Respondent is defectively before this court, as she has not assigned the final decree as error, but in view of the interest of the Commonwealth in the outcome of litigation for the dissolution of marriage we shall treat the assignment as properly amended and will consider the substantial questions presented by her case. *Caldwell v. Caldwell,* 70 Pa. Superior Ct. 332. It should be pointed out, however, that even in divorce cases counsel file inadequate assignments of error at their peril. *Epstein v. Epstein,* 93 Pa. Superior Ct. 398.

Libellant, a minor, who attained his majority before the master's hearing, exhibited his libel on December 13, 1943, at which time he was in military service and stationed at a camp in Tennessee. The libel was acknowledged before a notary public of that state, and had not been verified before a common pleas judge, prothonotary, or clerk, a Pennsylvania notary public, or a commissioned officer of the armed forces, as required by the Act of May 2, 1929, P. L. 1237, §25, as amended by Act of May 25, 1933, P. L. 1020, §1, and Act of April 13, 1943, P. L. 46, §1, 23 PS §25. The subpoena was served personally on respondent, who was also a minor and for whom no guardian ad litem was appointed in limine. Respondent made no preliminary objection to the form of the libel and filed no petition for the appointment of a guardian, but filed an answer to the merits and was represented by counsel of record at the master's hearing. At the close of the testimony before the master respondent's counsel questioned the sufficiency of the affidavit and respondent's want of a guardian ad litem for the first time when he moved to dismiss the libel for those reasons, inter alia. Libellant subsequently, by leave of court, filed an amended affidavit to the libel taken before an army officer. The verification of the libel before an authorized official was necessary, as the statutory requirement of libellant's oath or affirmation is mandatory, and its omission is a fatal defect in the entire proceedings. *Walentynowicz v. Walentynowicz*, 89 Pa. Superior Ct. 182. The amendment of libels, however, is a matter largely within the discretion of the common pleas, and in this instance the discretion appears to have been wisely exercised. *Powers' Appeal*, 120 Pa. 320, 14 A. 60; *Quinn v. Quinn*, 125 Pa. Superior Ct. 359, 189 A. 705. In compliance with R. C. P. 2034 the court on its own motion, upon learning of respondent's minority at the argument of exceptions to the master's report, appointed a guardian ad litem, who reported that respondent's interests had

been adequately protected, and that she had not suffered from the lack of a guardian at an earlier stage of the proceedings. Following the report of the guardian, the court concluded that no substantial rights had been denied respondent and entered the decree. We can find no abuse of the court's discretionary power. *Hamilton v. Moore,* 335 Pa. 433, 6 A. 2d 787.

On the merits of the action our independent examination of the record has led to the conclusion that libellant has shown by a preponderance of evidence amounting to clear and satisfactory proof that respondent by a persistent course of conduct has offered such indignities to his person as to render his condition intolerable and life burdensome and that imperious reasons exist to justify the relief sought. *Santilli v. Santilli,* 155 Pa. Superior Ct. 407, 38 A. 2d 415; *Britt v. Britt,* 153 Pa. Superior Ct. 587, 34 A. 2d 810.

The parties were married on November 10, 1942, and as had been previously arranged they went to live at the home of libellant's parents where they stayed until respondent returned to her own home on December 30, 1942. During this period there were frequent violent quarrels of such magnitude as to disturb the neighbors and punctuated by respondent's opprobrious and profane epithets, her false accusations that libellant was going out with other girls, statements that she was sorry she had married, and culminated on two occasions by respondent's going back to her own home for brief periods. Shortly before libellant entered the service, in February, 1943, respondent came to the table in a café where libellant was sitting with some friends and threw soup on him and one of his companions. On some of libellant's furloughs he found respondent in places of public entertainment with other men, and on one occasion when the parties had gone out together for an evening respondent pushed libellant into a police officer, called him vile names, and created such a disturbance as to be threatened with arrest. The

parties lived together for a week on libellant's furlough in August, 1943, and on another furlough in February, 1944, they had marital relations, although they did not effect a general reconciliation. A few days before the master's hearing, respondent met libellant and told him she was contesting the divorce action because she had "played me for a sucker before and she would keep on doing it." While libellant was in camp respondent wrote him a letter in which she asked for a divorce, stating that she no longer loved libellant, that she hated him, that she despised looking at his picture, and that she loved another man. In the letter respondent addressed libellant as "big shot" and "fool" and signed herself "Your X Wife", although at that time no divorce proceedings had been started. Libellant's testimony was corroborated in important particulars by his parents, his brother, a neighbor, and two friends, while respondent tacitly admitted the more important charges, offered no justification or excuse for her conduct, and declined to comment upon or attempt to explain away the attitude reflected by the taunting tone of the letter.

The courts have not attempted a precise definition of the affronts required to be borne before an innocent spouse's condition is rendered intolerable and his life made burdensome, as each case necessarily depends upon its own facts and is to a large degree unique. *Taylor v. Taylor*, 142 Pa. Superior Ct. 441, 16 A. 2d 651. It can be said, however, that it is not with slight or irregular acts of misbehavior that the law is concerned, but that there must be shown a course of insulting, disdainful, abusive conduct of such intensity and continuity as to indicate that marital harmony has given way to a demonstrated attitude of settled hate and estrangement. *Evans v. Evans*, 152 Pa. Superior Ct. 257, 31 A. 2d 590; *Viney v. Viney*, 151 Pa. Superior Ct. 86, 29 A. 2d 437. Evidence of what occurred after the separation and filing of the libel was relevant for the purpose of shedding light upon the nature of the at-

mosphere existing while the parties lived together, and discloses a continuation of the humiliation and incivility to which libellant had been subjected from the beginning of his married life. *Hewitt v. Hewitt,* 136 Pa. Superior Ct. 266, 7 A. 2d 45; *Campbell v. Campbell,* 126 Pa. Superior Ct. 190, 190 A. 536. Respondent's letter to libellant is particularly enlightening, demonstrating from her own pen the malignant contempt she held for libellant and showing that any interest she has in the preservation of the status springs from motives other than those of penitence and revived affection. *Zonies v. Zonies,* 151 Pa. Superior Ct. 317, 30 A. 2d 193. That the parties had marital relations after the more grave of respondent's offenses had been committed is merely a factor to be taken into consideration in determining whether libellant's condition was in fact intolerable, and isolated acts of intercourse are not conclusive that indignities had not been visited upon his person. *Nixon v. Nixon,* 329 Pa. 256, 198 A. 154; *Di Stefano v. Di Stefano,* 152 Pa. Superior Ct. 115, 31 A. 2d 357. Upon the whole record we think libellant has sufficiently shown his right to a severance of the burdensome relationship.

Decree affirmed.