## Mooney *v.* Mooney, Appellant.

Argued November 13, 1944. Before Keller, P. J., Baldrige, Rhodes, Hirt, Reno and James, JJ.

*Theodore G. Rich,* with him *Bellwoar & Rich,* for appellant.

*Michael J. McEnery,* for appellee.

Opinion by Hirt, J., December 13, 1944:

A divorce on the ground of desertion was granted on the uncorroborated testimony of libellant. Giving due regard to the report of the master we are unable to agree with his findings or with the conclusion of the court that the charge was sustained. Libellant's proofs are neither clear nor satisfactory. His testimony was

discredited in essential respects by that of the respondent and by his own admissions. On this ground alone he is barred. A case is not made out unless there is more than a doubtful balance of the evidence. *Mosher v. Mosher*, 149 Pa. Superior Ct. 422, 27 A. 2d 448. Moreover, in our view, undisputed circumstances go further and charge libellant with want of good faith in bringing the action.

Following the marriage in 1934 the parties lived with respondent's parents in Philadelphia for a time and then in Delaware County. Libellant's business was that of buying and selling automobiles but his avocation was racing horses at county fairs. Perhaps, in order to have a place to keep two race horses which he owned, he bought a farm in Zieglersville, Montgomery County, in August 1937. Libellant did not farm the land. The parties lived there for about fourteen months and until some time in October 1938. He testified that his wife deserted him then, because she was not satisfied with life on the farm. But against that testimony there is the admission that libellant was hopelessly involved financially in 1938. He had been sued, and because of pressure from his creditors had offered the farm for sale through a real estate dealer as early as July of that year. The farm was sold for $4,000. The settlement sheet, dated September 16, 1938, shows payments of a mortgage from the proceeds of sale and a creditor's claim of almost $1,500, leaving $448 which (according to testimony which we accept) was applied by libellant on other debts. He sold the farm because he had to and respondent's desires in the matter had nothing to do with it. Before delivery of possession to the purchaser respondent moved the furniture to her parents' home in Philadelphia but with libellant's consent. In fact libellant admitted that he agreed to move the furniture for her. Respondent testified that they left the farm together in the automobile of a friend. Libellant had lost everything; they had no money and she had no other

place to go. Although libellant maintained that a desertion occurred at the farm yet he rejoined his wife at the home of her parents in Philadelphia where they slept in the same bed. He left eight days or two weeks later according to his testimony (she said it was a matter of months) and the desertion if any occurred then. But there was no desertion. He testified that her parents were responsible for his leaving and that he asked his wife to live with him elsewhere. They did go together and looked at one apartment at least but no lease was signed because he expected her to pay the rent. Libellant had no earnings and there is no evidence that he had the means of supporting his wife or that he ever provided a home where they could live after they left the farm.

The record at best shows libellant to be a willing party to a separation. We have no doubt that he intended the separation at the farm to be final and that he later lived with his wife at her parents' home to suit his own convenience. In 1941 he was obliged to file answers to a questionnaire with his draft board. He had lived with his wife on D Street in Philadelphia long enough to give a semblance of truth to his statement in the questionnaire that his residence was there. He was able to secure deferment from military service by the misrepresentation that he was living with his wife and supporting her. After he left her parents' home respondent did not know his whereabouts for a period of about nine months. She went to his draft board in 1942 in an effort to locate him. This inquiry ultimately resulted in his reclassification; he was inducted into the army in February 1943 and entered military service as a private the following April. He brought this action on February 27, 1943. The following June respondent applied for an allotment from his pay as a soldier. Her claim was honored and she has been receiving some support from him by this means since July 1943.

It seems clear that libellant's immediate purpose in this proceeding was to terminate all responsibility for the support of his wife. However that may be he has not proved a desertion and is not entitled to a divorce.

Decree reversed at libellant's costs.