## Salakas *v.* Salakas, Appellant.

Argued November 10, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Meyer W. Gordon,* for appellant.

*Ralph E. Smith,* with him *Myron E. Rowley* and *Rowley & Smith,* for appellee.

OPINION BY ROSS, J., January 8, 1948:

In this divorce action, brought by the husband on the ground of desertion, the master who heard the case recommended that the divorce be granted, the court below dismissed the wife's exceptions and granted the divorce, and she has taken this appeal.

The parties were married on October 18, 1931, and resided together in Ambridge until June 15, 1944, when, while the husband was at work and without any notice or intimation to him of her intention, the wife left the marital home, taking with her the couple's three sons, aged nine, eleven and thirteen years, at the time of the

hearing in December 1946. About two weeks after the wife left the home, the husband was summoned to the office of an attorney in Pittsburgh, where the libellant was told by the respondent that she was going to put the children in an orphans' home unless he took them with him. The libellant took the three sons home, and the sons have since that time lived with him. In February 1945, one of the sons was ill with rheumatic fever and in bed between three and four months. At that time the libellant and two of the sons requested the wife and mother to return to the home and she refused. The libellant was later arrested on a non-support charge, instituted by the respondent. At the hearing of the non-support case, the libellant asked the respondent to return and live with him and again she refused. The respondent returned to the home for a short time on a few occasions. After the respondent left the home, the libellant, at irregular intervals, hired help to care for the home but for considerable periods of time he prepared meals and took care of the home. He worked in the mill, took care of the home and children, prepared the meals, did the washing, and with some help cared for the boy during his illness of three or four months.

The wife gives as her *only* reason for leaving that she wanted to get medical attention—"I leave because . . . I was sick . . . and I wanted to go to a doctor." This reason is totally destroyed by her own testimony when she admitted that for some months prior to the separation she had been undergoing treatment by Dr. Steele in Pittsburgh, for which her husband was paying, and that Dr. Steele continued to treat her for nearly three months after the separation. Consequently, it is not necessary to discuss this phase of the case further. Where a desertion is conceded or appears and is without legal, reasonable cause, it is presumed to be wilful and malicious, and if persisted in for two years or more, will entitle the injured party to a divorce. *VanDyke v.*

*VanDyke*, 135 Pa. 459, 19 A. 1061; *Urbaczewski v. Urbaczewski*, 158 Pa. Superior Ct. 614, 45 A. 2d 925.

The respondent's withdrawal from the common domicile and cessation of marital relations imposed upon her the burden of proof to establish by the preponderance of evidence facts that would entitle her to a decree of divorce or that the separation was by consent. *Ewing v. Ewing*, 140 Pa. Superior Ct. 448, 14 A. 2d 149. No testimony was presented that would establish facts which would entitle the respondent to a divorce and she does not so contend.

However, at the meeting in the lawyer's office in Pittsburgh in July 1944, the parties entered into an agreement whereby the husband agreed to pay fifty dollars a month for the support of the respondent, and she contends that by entering into this agreement the libellant consented to the separation. An agreement on the part of the libellant to pay a monthly sum to the respondent for her support is not conclusive evidence of his consent to the separation (*Halley v. Halley*, 113 Pa. Superior Ct. 206, 172 A. 403) and the agreement in this case specifically negatives the libellant's consent to the separation by providing: "nor does George Salakas by the execution and/or performance of the terms hereof acknowledge that the separation of Helen Salakas from the common domicile was with his consent nor shall the continuance thereof be considered as condoned".

Furthermore, the libellant's testimony—which we believe—shows that he did not consent to the separation. He testified that, at the lawyer's office and before the agreement was signed, he asked the respondent to return to the home and she refused, and she does not deny that at this meeting she said to him, "You take the children with you; if you don't, I am going to take them to the orphans' home". The libellant further testified: "When I signed this paper, her attorney, he told me, he says, 'Your wife is sick'. I says, 'All right; what do

you want from me?' I says to him, 'I am going to pay her fifty dollars a month, and pay her doctors, and give two or three months time to heal up her foot and . . . I do anything for her to come back home'. He says, 'You better sign the agreement'. I says, 'I sign anything for you'. I didn't look at it, at all. I says, 'I sign anything you hand me, and give her fifty dollars a month, and I want her back.' "

Even if we were to assume from the testimony that the libellant consented to a temporary separation, it ceased to be consentable more than two years before the hearing on the libel in December 1946. On cross examination the libellant testified as follows: "Q. George, when you were in the attorney's office, in Pittsburgh, with your wife, you have stated that you agreed that you and she would be separated for three months, until she got better? A. Just, maybe, get better, not exactly time. As soon as she healed up her foot and *was discharged by the doctor.*" (Italics supplied.) At the time of the meeting, the only medical attention the respondent was receiving was from Dr. Steele, and under date of October 4, 1944, the libellant received a letter from Dr. Steele advising that respondent had been discharged from his care the day before. Immediately upon receipt of this letter, libellant attempted to get in touch with the respondent, who was living with her parents in Pittsburgh. After much difficulty he located her and requested her to return to the home and she refused. The libellant, corroborated by two of the sons and a neighbor, many times requested the respondent to return and she refused, saying that "I am not well". Even in February 1945, when her eleven-year-old son suffered an attack of rheumatic fever, from which he was confined to his bed for nearly four months, the respondent was asked by the father and by the sons to return and she refused, saying "she had to go to the doctor for treatment". She visited the sick boy and, according to the testimony of the oldest boy, "remained about half

an hour and did not take her hat and coat off". The stricken boy testified relative to a visit while he was in bed that when he asked her to stay that "she said she had to go to the doctor" and that she didn't do anything for him. From a reading of the record in this case, it is impossible to escape the conclusion that the respondent had no interest in her husband or in her home and had a callous disregard for the health and welfare of her children. Her only interest was in herself and in her ills, and perhaps her monthly check for support.

The respondent may be ill, as she testified, but she produced no medical testimony to evidence it. It may be true that it is necessary for her to remain at her parents' home under the care of her mother, but aside from her own bald statement, there is no other evidence to that effect in the record—the mother didn't testify nor her father nor anyone else. The respondent was represented by able counsel. It is fair to assume that *if* there had been available any helpful medical testimony or corroboration of the necessity to remain under the mother's care, such evidence would have been presented. Her case rests solely upon her own testimony and from our examination of it we agree with the learned court below that she did not meet her burden of proving that the separation was consentable.

Decree affirmed.