## Merlino *v*. Merlino, Appellant.

Argued March 22, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Aaron Trasoff*, with him *Alma H. Arnold*, for appellant.

*Pershing N. Calabro*, for appellee.

OPINION BY RHODES, P. J., July 15, 1949:

The libellant charged his wife, the respondent, with wilful and malicious desertion. The master recommended a decree of divorce. She filed exceptions to the master's report. The court below overruled the exceptions and granted a decree a vinculo matrimonii. Respondent has appealed from this decree of the court below granting a divorce to libellant.

Section 10 of the Act of May 2, 1929, P. L. 1237, as amended by the Act of March 19, 1943, P. L. 21, §1, 23 PS §10, provides, inter alia, as a ground for divorce from the bond of matrimony, as follows: ". . . that the other spouse: . . . (d) Shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years; . . ."

Admittedly, respondent separated from libellant on November 1, 1944, and the parties have not lived together since that time. Respondent removed her belongings to

Atlantic City, New Jersey, where she set up a home of her own and engaged in business. She made no complaint of libellant's treatment while they were living together. She testified that he did not do anything that caused her to leave; her sole defense to the charge of desertion was, "I left because I was sick." She has persistently refused to return and live with him in Philadelphia. The only question presented is whether she withdrew from the habitation of libellant without a reasonable cause. The separation had continued for more than the statutory period at the time of filing the libel on April 4, 1947; and the date of separation is conceded. Respondent testified: "Q. When did you leave your husband for good? A. November 1, 1944."

We recognize and have held that "ill health both explains and excuses a wife's conduct, and that the acts of a spouse resulting from ill health do not furnish a ground for divorce." *Fawcett v. Fawcett*, 159 Pa. Superior Ct. 185, 187, 48 A. 2d 23. See, also, *Stinson v. Stinson*, 163 Pa. Superior Ct. 497, 500, 63 A. 2d 413; *Glass v. Glass*, 164 Pa. Superior Ct. 118, 124, 63 A. 2d 696. On the other hand, alleged illness cannot be used as a mere excuse for a wife's withdrawal from the habitation and the cessation of marital relations.

The parties were married in Philadelphia on October 9, 1919. They lived together in numerous places in that city until the final separation on November 1, 1944, at which time they resided at 1311 Wolf Street, which they owned. They are both citizens of the United States and of the State of Pennsylvania, libellant having been naturalized after he entered this country. Libellant is a laborer employed by the Reading Railroad Company. Respondent has engaged in various business enterprises, and this propensity resulted in their change of residence about nine times. Three children were born of the marriage. One daughter was born in 1920, another in 1922, and a son in 1923. The son testified that he endeavored

to effect a reconciliation in 1945, and that his father was willing to have his mother back, but that his mother refused to return to the family home. He testified that in refusing she gave as her reason that she did not want to live on Wolf Street. Respondent's occasional returns to Philadelphia from Atlantic City were for the purpose of seeing her children.

We are convinced that respondent left because of her own dissatisfaction. She testified, "I am a business woman." Libellant was a laborer. She could find no acceptable place to live with him. Her alleged neurotic condition seemed to have a close relationship to the success or failure of her business ventures. She also testified that she got sick "as soon as I put my foot in Philadelphia." However, she also admitted that she got sick in Atlantic City. We agree with the master that "there was no justification for continued residence in Atlantic City away from her husband."

The medical testimony as to her condition in so far as it might have some relationship to the issue involved is of little value and of no consequence. Some of the discussion of the experts as to neurosis and psychoneurosis was interesting but shed no light on the solution of the present controversy. Respondent's expert had not seen her between 1937 and 1947, and he testified that he could give no opinion about her condition during that period. This expert testified that in 1947 he examined her and treated her only in relation to the complaints which she gave him at that time. On June 5, 1947, he thought she was suffering with a "psychoneurosis of the anxiety exhaustive state," and he recommended that "she remove herself from Philadelphia" and "that if possible she go to Atlantic City." As a matter of fact, she had been living in Atlantic City for about three years prior to this time. Another qualified expert testified that there was no such accepted term as "psychoneurosis of the anxiety exhaustive state"; and

his testimony was to the effect that the prescribed treatment of residence in Atlantic City is an indication that she was suffering from no real illness.

This case is to be distinguished from those in which we have held that ill health may explain or excuse a wife's conduct.

In *Fawcett v. Fawcett,* supra, 159 Pa. Superior Ct. 185, 48 A. 2d 23, a divorce was refused on the ground of indignities to the person of libellant, as the acts of respondent were at most an occasional outburst of an emotionally unhinged woman and due to her physical and mental ailments. In *Stinson v. Stinson,* 163 Pa. Superior Ct. 497, 63 A. 2d 413, we held that the evidence did not warrant a decree of divorce on the ground of indignities, as the acts of the respondent wife were the result of her physical and mental condition. In *Glass v. Glass,* supra, 164 Pa. Superior Ct. 118, 63 A. 2d 696, a divorce was refused on the ground of indignities because we concluded from the evidence that the acts of alleged indignities lacked the essential of deliberate, insulting, and humiliating intent because respondent's mind had been deteriorated by disease and serious nervous disorder.

In *Salakas v. Salakas,* 162 Pa. Superior Ct. 114, 56 A. 2d 357, we held respondent's alleged reason for leaving libellant—that is, because of illness—was totally destroyed by her own testimony. This is true in the present case. And the medical testimony was entirely insufficient to excuse respondent's conduct. Her alleged neurosis now seems to be raised with the apparent hope of continuing the marital ties for the obvious purpose of obtaining support to compensate for her failure to be a successful "business woman." Since the final separation she has never had any intention of returning to libellant, and her alleged ill health is a belated excuse.

It is our conclusion, from a review of this record, that respondent's withdrawal from the common habita-

tion was without a legal cause, that it was not consentable, that the desertion was wilful and malicious, and that respondent had absented herself from the habitation of libellant for and during the space of two years without reasonable cause.

The decree of the court below is affirmed.