## Benny, Appellant, v. Benny.

Argued March 6, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

· *Elmer J. Harris,* with him *Henry Greenwald,* for appellant.

*Gerald G. Dolphin,* with him *Maurice S. Cantor,* for appellee.

OPINION BY ROSS, J., July 20, 1950:

In this divorce action, the master recommended that a divorce be granted on the ground of indignities. Exceptions to his report were sustained by the court below, the libel dismissed and the libellant husband took this appeal.

The libellant has the burden of proving by the preponderance of the evidence (*Dash v. Dash,* 357 Pa. 125, 53 A. 2d 89) that the respondent by a course of conduct rendered his condition intolerable and his life burdensome. *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 50 A. 2d 520; it must clearly appear from the evidence that he is the innocent and injured party (*Othmer v. Othmer,* 158 Pa. Superior Ct. 384, 45 A. 2d 389) and he must establish his right to a divorce by evidence that is clear and convincing. *Fawcett v. Fawcett,* 159 Pa. Superior Ct. 185, 48 A. 2d 23. Judged by these well established principles, the libellant has not shown that he is entitled to a divorce and consequently the decree of the court below dismissing the libel will be affirmed.

The parties were married on September 22, 1939. At the time of the marriage the respondent was in an advanced state of pregnancy, the child being born the following month. The libellant was then in military service. He testified, relative to the marriage, that the respondent "wrote a letter to Washington, D. C. stating the fact I had put her in the family way" and "Washington sent a letter to my commanding officer and I was called into headquarters and it was either trial by court martial for disgracing the uniform or marrying her, so I went ahead

and married her for good or worse". With this expressed reason for his entering into the marriage, it is not surprising that it turned out unhappily for both parties, but neither domestic unhappiness nor lack of affection is a ground for divorce. *Breed v. Breed,* 73 Pa. Superior Ct. 9. As so well stated by Judge RENO in *Bobst v. Bobst,* 160 Pa. Superior Ct. 340, at page 344, 51 A. 2d 414, at page 416, "The divorce courts cannot rectify misalliances; they dissolve only those marriages which have produced results which the legislature has recognized as grounds for divorce."

After the marriage, the respondent continued to live with her parents, and the libellant after his discharge from service in October 1939 lived with a friend in New Jersey until February 1940, when the parties and their baby went to live with the libellant's sister in Connecticut. From that time until the libellant re-enlisted in the army in June 1942, the parties lived at various places, alone or with relatives. The libellant was again discharged from service on October 22, 1945, re-enlisted the following day and is still in service. The parties finally separated in July 1946. From a reading of the record, we agree with the learned court below that the libellant "at no time, established a suitable home for his wife."

Much of the testimony in the case is vague and confusing. However, it appears that sometime in June 1942, the libellant came home from work and found some neighbors in his home with the respondent. He testified: "They were eating and drinking beer . . . there was nothing left on the stove to eat. I just blew my stack and ordered everybody [including respondent] out . . . the cops came down . . . and they locked me up that night." He further testified that the disturbance arose because "they didn't have a right to eat up my chow". However, the respondent testified that the libellant came home in an intoxicated condition and threatened to kill

her with a knife and, as a result, he was arrested. In any event, when the libellant was called before the court the next day, according to his testimony "I just blew my stack . . . the Judge gave me ten days to cool off . . . because I sounded off in court. It was contempt of court". He also testified that shortly after his release from jail. "I told the probation officer . . . I don't intend to live with my wife any more . . . so I re-enlisted". He saw his wife only twice "on weekend passes" from the time of his re-enlistment until he was sent overseas in April 1943 and during the time he was overseas he did not write to her or she to him. He returned from overseas in July 1945, went to his mother's home and did not contact his wife or advise her of his return until after a lapse of several weeks.

The libellant bases his right to a divorce primarily upon respondent's alleged misconduct "with respect to other men". In support of his charge of misconduct, he testified that in April 1943 she had gone on an overnight motorcycle trip with a Bob Graham and on a similar trip with one "Tony"; that respondent admitted that while he was overseas, she underwent an abortion; that after he returned from overseas, she told him many times that she did not love him, the libellant, but loved Graham; and finally that just before they separated in 1946 she had "openly flirted" with other soldiers at New Cumberland—where libellant was then stationed—and solicited their addresses.

The respondent did not deny the motorcycle trips but explained that they were made with a number of other friends and that there was no misconduct. We agree with the learned court below that while her "actions were suspicious, there is no evidence of any misconduct". She denied the testimony relative to an abortion. She neither admitted nor denied the other charges of the libellant. She testified that on many occasions the libel-

lant was intoxicated and abused her physically; that he never showed any affection or respect for her and that he had a violent temper.

Our thorough review of all the testimony in the case shows that the libellant cannot be called "an injured and innocent spouse" in any sense of the word. We agree with the learned court below that it is "clear that both parties have been at fault". As stated by Judge HIRT in *Goshorn v. Goshorn,* 163 Pa. Superior Ct. 621, at page 623, 63 A. 2d 135, at page 136: "It is settled that '. . . where both parties are nearly equally at fault, so that neither can clearly be said to be "the injured and innocent spouse", the law will grant a divorce to neither, but will leave them where they put themselves . . .'; Daly v. Daly, 137 Pa. Superior Ct. 403, 9 A. 2d 192."

Decree affirmed.