## Sanford v. Sanford

*Albert E. Holl, Jr.,* for plaintiff.

*Guy G. deFuria* and *Joseph D. Calhoun,* for defendant.

DIGGINS, J., January 13, 1955.—This is an action in divorce filed by the wife based upon the contention that her husband was guilty of indignities to her person from a time beginning after their marriage on May 5, 1945, which action the defendant has defended. Although plaintiff was not originally of the same economic status, since the marriage the parties herein have always lived in a gracious atmosphere, financially secure, and defendant has set up an irrevocable trust fund in favor of plaintiff which gives

her an income in excess of $6,000 a year, which income will continue regardless of the final disposition of this divorce action.

After four hearings at which 522 pages of testimony were taken, the last one being held November 19, 1952, the master, in a most careful, comprehensive and detailed report filed August 10, 1953, recommended that the complaint be dismissed because he felt that plaintiff had completely failed to show a continuous course of conduct on the part of defendant toward her manifesting settled hate and estrangement and, said the master:

"On the contrary, most of the incidents related by the plaintiff and her witnesses demonstrated clearly that the defendant loved her deeply and wanted her near him at all times."

No exceptions were filed to the master's report but rather plaintiff on August 26, 1953, filed a petition for leave to file an amended complaint and to refer the matter back to the master for further hearing, alleging that in contempt of a court order, defendant did on December 6, 1952, abscond the jurisdiction and took the minor child of the parties away with him, and notwithstanding diligent and persistent efforts of plaintiff mother and of the authorities, defendant father eluded apprehension or discovery of the whereabouts of himself and the child, and on September 11, 1953, the court granted leave to file amended complaint and referred the matter back to the master, and the time for filing exceptions to the master's report was extended.

On November 12, 1953, a further hearing was held, the sole witness being plaintiff who testified to the additional fact that defendant had taken their daughter into his custody contrary to an order of this court and had deprived plaintiff of the society of their child and that this condition was still prevailing at the

time of the hearing, and also described her efforts to locate the child and the effect of this situation upon her personally. Counsel for plaintiff points out in his brief that since the hearing the child has been restored to her mother. At this hearing, the defense offered no evidence whatever.

Thereafter, on December 23, 1953, the master filed a suppplemental report in which he reversed the recommendations of his original report and found that the averment of indignities to the person as alleged in the complaint and amended complaint had been sustained and recommended that the prayer of plaintiff be granted and a divorce entered.

In contradistinction to the master's conclusions as set forth in the original report, the master in the supplemental report states that in reaching the conclusions as set forth in his original report, he felt that much of defendant's conduct originated from the fact that he had been raised in a wealthy family and had been accustomed to having his own way insofar as money would permit, and that plaintiff had had more than the usual opportunity to see and observe defendant under almost all circumstances prior to her marriage and that having made her bed, she should lie in it although she might be uncomfortable at times, and he originally refused to believe plaintiff's statement 'that defendant no longer loved her and plaintiff's further statement that defendant was not particularly fond of their daughter and resented the daughter's intrusion into the private lives of the parties. The master points out in a supplemental report that he did originally make certain findings of fact indicating that defendant frequently acted in a very wilful manner toward plaintiff, their friends and guests, and that defendant was accustomed to having his own way whenever possible, and then the master goes on to say in the supplemental report that

he now believes that he completely failed to understand the true import of plaintiff's original testimony, and states in the supplemental report that he can think of no more positive demonstration of settled hate and estrangement between a married couple than for a father to deliberately take their own child from the mother and to keep the child's whereabouts unknown and to deprive the mother of the company of their young daughter, and to keep the mother in ignorance of the child's whereabouts and the condition of her health is the most refined torture that a husband could inflict upon his wife, and the master stated that he believes that defendant's action in this respect was without cause and premeditated, and that it was not prompted by any thought of the welfare of the child but solely from his own selfish motive to have his own way at all costs and to hurt plaintiff at the same time.

Defendant filed exceptions to this supplemental report and recommendation and it is those exceptions which are now before the court for disposition.

This case poses a novel question. Neither party has cited nor can we find by exhaustive research any case in Pennsylvania or elsewhere directly in point. We have here a situation where all of the acts of indignities testified to by plaintiff originally were discounted by the master in light of the legal test of indignities, followed by the taking and secreting of the child from plaintiff for a long period of time with its subsequent understandable heartbreak, worry and fear to the mother, and in the light of this single subsequent circumstance reversing himself as to his conclusion on the original record and his recommendation.

We think the case was properly reopened for the admission of the testimony regarding the taking and secreting the child from the mother. The master thought this latter act a positive demonstration of

settled hate and estrangement between a married couple and the depriving of the mother of the company of her young daughter and keeping her in ignorance of the child's whereabouts and the condition of the child's health the most refined torture that a husband could inflict upon his wife, and that it was without cause and premeditated and designed to hurt plaintiff. With this reasoning we agree.

In speaking of this matter of indignities, Mr. Justice McPherson, in Brubaker v. Brubaker, 4 Dist. R. 185, 187, cited with approval by the Superior Court in Trimbur v. Trimbur, 171 Pa. Superior Ct. 541, 543, said:

"The 'person' meant by the (divorce) statute is the indivisible personality formed by the union of body and spirit, and indignities offered to either are necessarily offered to both."

If we are then to accept this doctrine and consider the difference between physical hurt to the body and mental hurt to the spirit, we will clearly understand what the master means in his supplemental report, and the court said in Trimbur v. Trimbur, supra:

"An indignity to the person is an affront to the personality of another, a lack of reverence for the personality of one's spouse. It consists of various acts, so varied in their nature and impact that the courts have not undertaken to define the offense in more than general terms. *Crawford v. Crawford*, 64 Pa. Superior Ct. 30; *Breene v. Breene*, 76 Pa. Superior Ct. 568. But the offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement. For then, when the foundation has collapsed the superstructure falls, and inevitably the married condition becomes intolerable and life is indeed a burden. This is the doctrine of all the cases."

In Trimbur v. Trimbur, supra, the court also says that:

"In the nature of the case, no minimum length of time is or can be prescribed for the completion of the offense. The test is not the period of the conduct but it continuity and severity."

To this reasoning and its application to this case we subscribe.

In studying the exceptions to the supplemental report and recommendation, we have carefully considered the possibility that the master may have been too zealously upholding the hand of the court where its processes had been contemptuously flaunted, or was permitting his personal emotional reaction to the single act of defendant in taking exclusive possession of his child, to cloud his judgment with anger, and we have concluded that he was not so influenced and we have carefully sobered our judgment so that we have not been so influenced. Certainly defendant was in contempt of court, but separate, apart and above, he offered to plaintiff a serious indignity.

There is ample authority for the fact that the requirement that indignities must be directed to the person of plaintiff does not exclude the truth that it can be established by evidence of mistreatment of children. True this is speaking of physical mistreatment of children, but if one can establish an indignity within the meaning of the law in favor of the wife where the husband mistreats a child in her presence (Walker v. Walker, 109 Pa. Superior Ct. 539, 546; Picciano v. Picciano, 110 Pa. Superior Ct. 189, 195), it follows that one can sustain an indignity in favor of the wife where one uses a child to wound and harass his spouse, and the mother, in testifying as to the effect of the concealment of this child upon her, said many things to make plain her hurt, and her poignant description of her feelings is as follows:

". . . oh, I can't—I can't describe it—you wake up in the middle of the night—you get to be all right when you are terribly, terribly busy and when you are terribly, terribly tired—but I wake up in the middle of the night and I feel as though she is in the next room, I can hear her and I can smell—the kind of smell a little child has, when they are clean, dirty, I can smell it, and there is music she likes, and there are always things to remind me, even if I am terribly busy, all of a sudden, I will be at the hospital, at a meeting or something, and all of a sudden I will hear a child's voice or I will see a child that will remind me of Julie—or maybe I haven't cried for five days, or something, and I am fine and I have no control over it—I have no control over it at all—and then again, I just can't do anything—and all her Christmas presents are still up in the attic and it seems to be the practical thing to take away all the reminders, but the reminders are in music and they are in everything."

We are not unmindful of the general rule that in a proceeding for divorce on the ground of indignities, evidence of what occurred after the separation and the filing of the complaint is relevant for the purpose of shedding light upon the nature of the atmosphere existing while the parties lived together. Even though such a case as Martin v. Martin, 157 Pa. Superior Ct. 538, where this rule is stated, could not be distinguished from the present case, and we think that case readily can be because there the acts committed after the suit was started were not in themselves cause for divorce or sustaining elements in a cause but were indicative as to whether or not the conditions complained of were really intolerable, and further, there was no amended complaint to include allegation of the further indignities.

The rule is best stated, we think, in Hewitt v. Hewitt, 136 Pa. Superior Ct. 266, wherein the court

says on one hand: "Testimony as to respondent's conduct after libellant's withdrawal from the house may be relevant for the purpose of shedding light upon respondent's behaviour prior to the separation" (syllabus) and, on the other hand: "Under the Act of May 25, 1933, P. L. 1020, section 25, the court may allow any libel to be amended so as to include additional grounds or causes for divorce, including such as arose subsequent to the awarding of the subpoena." (syllabus.)

Therefore, inasmuch as plaintiff in this case filed with leave of court an amended complaint setting up the additional allegations as a cause for divorce, the introduction of evidence as to additional grounds or cause for divorce, even though they arose after the original suit was started, is relevant on the general merits of plaintiff's case and is also relevant for the purpose of shedding light upon defendant's behavior prior to the separation, and as the Supreme Court of Pennsylvania said in Phipps v. Phipps, 368 Pa. 291, and as reasoned by the master here, other misconduct of respondent tending to prove indignities but which might have been excused as mere indiscretions or discounted as the imaginings of an overly suspicious or jealous spouse, assumes its true import when pondered against the background of defendant's deliberate and flagrant subsequent act. Thus, says the Supreme Court and the master here, the evidence as a whole becomes capable of constituting as a matter of law indignities to the person of plaintiff rendering her condition intolerable and her life burdensome.

The master in this case, Theodore C. Jenkins, Jr., has amply demonstrated the reason why this court has always had great confidence in the diligence, integrity and capabilities of the members of the bar who serve this court in alphabetical rotation as masters. His original report of 47 pages consisted of 107 findings

of fact and a forceful and learned discussion, and demonstrated his fairmindedness when in the light of the additional evidence, he forthrightly stated that he then believed that he completely failed to understand the true import of the original testimony until pondered against the background of defendant's subsequent conduct.

The report shows a great sense of responsibility, sincerity, learning and courage, and we therefore make the following

*Order*

And now, to wit, January 13, 1955, the exceptions to the supplemental master's report heretofore filed be and the same are hereby dismissed and a final decree divorcing the parties from the bonds of matrimony is handed down herewith.